## PATRICK BRENNAN v. WILLIAM C. BUSCH.

*Payment of orders by direction of drawee—Finding of jury—Cross-examination.*

1. The Court find that there was testimony tending to show that the plaintiff had authority to pay orders drawn by a logging contractor of defendant on defendant, and that the special finding of the jury that such authority was not *unlimited* does not conflict with his having *limited* authority.

2. It is improper to ask a defendant on cross-examination, on the alleged ground of testing his credibility, if he has been on the witness stand before, or to offer to show, when an objection to such question is sustained, that he had been such witness one hundred times, or to state to the witness, in the form of a question, that he had had about ten cases in the Supreme Court.

Error to Marquette. (Grant, J.) Argued November 2, 1887. Decided January 5, 1888.

Assumpsit. Defendant brings error. Affirmed. The facts are stated in the opinion.

*F. O. Clark*, for appellant.

*W. P. Healy*, for plaintiff.

SHERWOOD, J.   This is an action of assumpsit brought by the plaintiff against the defendant to recover the sum of $877.97, with interest, for goods sold and delivered, for moneys paid on orders of the defendant, and for team work furnished to the defendant.   The claim is for a balance due upon the account.

The declaration is on all of the common counts, accompanied by a bill of particulars of the plaintiff's items claimed thereunder.   The plea is the general issue.

A trial was had in the Marquette circuit, and the plaintiff recovered a verdict and judgment for the sum of $930.72.

It appears from the record that in 1885 and 1886 the defendant, Busch, owned pine lands in Baraga county, and the plaintiff owned and carried on at the same time a store at which he sold merchandise and supplies for lumber camps at L'Anse.

The evidence tends to show that Busch carried on his lumbering at the camps by contracts with others who did the work, and whom he largely paid through the store goods of the plaintiff; that he let one contract in 1885 to Martin Kelsey, a brother-in-law of the plaintiff, to get out a certain quantity of logs on lands about 25 miles from L'Anse, and on November 9, 1885, he wrote the plaintiff as follows:

"I have just closed, or rather arranged, with Mr. Martin Kelsey for putting in pine for me on Point Abbey, and agreeing to pay for same as work progresses.   To aid him in starting, I would agree to guarantee payment for supplies necessary to supply such job.   Send me bill of such amount of supplies as may be got under this order."

The plaintiff responded to the letter of Mr. Busch by furnishing supplies to Kelsey, between that time and December 1, to the amount of $218.11.   Defendant did not give any other order by letter, but in a few days he visited L'Anse, and there saw the plaintiff, and plaintiff testified that—

"A little before Christmas Busch told me to pay the men. He told me that Thanksgiving day.   He told me to pay his

men, and Belanger's men, another contractor of his; that is, orders drawn by Kelsey on him. I began paying them about Christmas, 1885. December 24 I paid $100."

The plaintiff further testified that it was agreed right along between himself and the defendant that he (plaintiff) was to pay the men, and he (Busch) would take up the orders; and that witness was to keep on paying the men.

The plaintiff furnished the defendant with monthly statements of the account, and plaintiff testified that defendant never objected to any of them until after the job of Kelsey was closed, which was about the first of May, 1886. The orders paid by the plaintiff were charged in the monthly statements sent, and from time to time the defendant made partial payments of the amounts charged.

The testimony of the parties was conflicting upon several points, and the defendant claims that by the arrangement between them he was to pay the plaintiff only to the extent of the moneys Kelsey was to receive upon the job, and that he had paid that amount or more when the suit was brought; and further that the defendant wrote to the plaintiff on the twenty-fourth day of February, 1886, the following letter:

"DEAR SIR: Yours, showing a balance of $673.78, at hand. I wish once more to call your attention to what I have told you, and have also written in former letters, that I would not assume an unlimited account of Kelsey, but only as far and fast as he earns it. Of course, would have to protect labor first."

The plaintiff, however, testified that he never received such letter, and some question was made upon the testimony whether such letter was ever sent to the plaintiff.

There was, however, testimony offered upon the trial tending to show that Kelsey earned upon his job, according to his contract with Busch, more than enough to pay the account of the plaintiff, including that claimed for in this suit.

The defendant's counsel, on the trial, objected to any testimony showing payment of orders drawn by Kelsey upon

the defendant, upon the ground that the plaintiff had no authority to pay such orders.

We think there was testimony in the case tending to show that the plaintiff had such authority, and that he kept within the limits of it, and the special finding of the jury that he did not have unlimited authority does not conflict with the fact that he did have limited authority.

The following occurred upon the trial, and is alleged as error by counsel for the defendant. The defendant was upon the stand as a witness for himself, when the following questions were asked by Mr. Healy, counsel for the plaintiff:

"Have you been on the witness stand before?"

*Mr. Clark.* "I object to that as incompetent."

*Court.* "I do not think that is material."

*Mr. Healy.* "I will offer to show that Mr. Busch has been a witness on the stand about one hundred times."

*Mr. Clark.* "I object to that statement in court."

*Mr. Healy.* "I offer it to go to his credibility."

*Court.* "I think the proper way would be to put questions."

*Mr. Clark.* "I ask the court to say to the jury that the statement of counsel is irregular, and out of order."

*Court.* "Go on."

*Mr. Clark.* "Note an exception. I want an exception to all these things that are overruled."

*Q.* "You have had about ten cases in the Supreme Court of Michigan?"

*Mr. Clark.* "I object to the question."

*Court.* "I think the objection is good."

The foregoing questions and offer to prove were improper, and were so ruled by the court; but we find nothing in them so prejudicial to the rights of the defendant as to warrant a reversal of the judgment upon that ground.

No other questions are made upon the testimony needing further attention.

The defendant presented 10 requests to charge. They are quite lengthy, and some of them ask the court to assume facts from the testimony which should be found by the jury.

We have examined them all carefully, and it is unnecessary to discuss them at any length, as we are all satisfied that all therein contained, proper to be given to the jury, is included in the charge given by the circuit judge.

Several of the requests ignore the testimony of the parties in relation to the agreement between them for the credit claimed to have been extended by the plaintiff.    Each party gives a different version of the same, and the theories of each were submitted to the jury in the charge with perspicuity and care, and we have been unable to discover, either in the rulings upon the requests or in the portions of the charge excepted to, any prejudicial error.

The judgment must therefore be affirmed.

CHAMPLIN and MORSE, JJ., concurred.

CAMPBELL, C. J., did not sit.