GEORGE B. CLUETT ET AL. v. GATES L. ROSENTHAL, GARNISHEE OF SOL AND SAM ROSENTHAL.

[See 98 Mich. 208.]

*Garnishment—Trial of statutory issue—Waiver—Evidence—Fraudulent conveyances—Chattel mortgage—Assignment for benefit of creditors—Conduct of counsel.*

1. It is not the policy of the courts, nor is it practicable, to pause in the trial of a cause, and open up a collateral inquiry upon the question of whether a wrong was committed in obtaining the information which a witness possesses.

2. One who is in no way responsible for the tort by which information has been obtained by a witness may introduce evidence of the facts ascertained, even though a trespass or wrong was committed by the witness in obtaining the information.

3. A garnishee defendant waives the right secured to him by How. Stat. §§ 8069, 8070, to have the statutory issue tried at the same term at which judgment is rendered against the principal defendants, by noticing the case for trial for a subsequent term.[1]

4. Where such right is waived, the case must thereafter proceed as other issues of fact, subject to notice by either party.

5. A chattel mortgage given to a trustee to secure certain creditors,

[1] As to waiver of laches on the part of the plaintiff in failing to bring to trial the statutory issue made in a garnishment proceeding, see *Meigs v. Weller*, 90 Mich. 629.

100 MICH.—13.

which authorizes the trustee to take possession of the mortgaged property forthwith, and, in addition to the usual power of sale, provides that, if he shall deem it more advantageous to sell the property, or any part thereof, at private sale or in the usual course of trade, he may do so, applying the proceeds to the liquidation of the mortgage indebtedness, does not vest any actual title in the mortgagee, and is not inconsistent with the right of the mortgagor, or his creditors who may acquire liens, to redeem at any time, and hence does not amount to a general assignment with preferences.

6. Where in garnishment proceedings against a trustee, to whom a firm with which he had formerly been connected had mortgaged their entire stock of goods, books of account, credits, evidences of debt, rights of action, and bills and accounts receivable to secure certain specified creditors, the testimony tends to show that the mortgagee had, after severing his connection with the mortgagors, kept some track of their business; that when he took the mortgage he went through the form of taking possession, but continued the mortgagors in actual charge of the business; that he subsequently sold the mortgaged property, and bid it in in form, but that the mortgagors continued in possession; and that in taking the mortgage he assumed to act as trustee for certain creditors, who do not appear to have been present,—the jury may well find that the trustee would, as a reasonably prudent man, before assuming to act as trustee, inform himself as to the state of said creditors' claims by reference to the books of the mortgagors, especially in view of his previous knowledge of their business, and, if the books tend to show that no such indebtedness as that claimed to exist in favor of a portion of said creditors was ever created, they are competent evidence as showing a fraudulent intent on the part of the mortgagors in executing the mortgage, and some evidence of *mala fides* on the part of the mortgagee.

7. The Court will not regard captious objections to the arguments of counsel, and will allow something for their zeal, and will hesitate in any case to consider that they have intentionally transgressed the rule; but when the language used is such as evinces a studied purpose to arouse the prejudices of the jury, based upon facts not in the case, the Court cannot overlook it, or consider that a party against whom such effort has been made has had a fair consideration of his case at the hands of the jury.

Error to Muskegon.    (Dickerman, J.)    Submitted on briefs January 3, 1894.    Decided May 18, 1894.

Garnishment proceedings. Defendant brings error. Reversed. The facts are stated in the opinion.

*Bunker & Carpenter,* for appellant.

*Brown & Lovelace,* for plaintiffs.

MONTGOMERY, J.    On the 25th day of June, 1892, the principal defendants, Sol and Sam Rosenthal, executed to the garnishee defendant, Gates L. Rosenthal, a trust mortgage to secure $15,800 of alleged indebtedness of the mortgagors, which consisted of $1,850 to the Union National Bank, $9,000 to Gates L. Rosenthal, $2,950 to Rosen Bros., and $2,000 to Ben Kersberg, of Kansas City. The mortgage covered the entire stock of Rosenthal Bros., together with their books of account, credits, evidences of debt, rights of action, and bills and accounts receivable. The defendant took possession under the mortgage very shortly after its execution. This suit in garnishment was instituted for the purpose of attacking the validity of the mortgage. It is claimed—First, that it amounted to a general assignment with preferences; and, second, that it was actually fraudulent as against the creditors of Rosenthal Bros.

We do not find support for the first contention. The only provision of the chattel mortgage which is unusual is that authorizing the mortgagee to sell at private sale or in the usual course of trade.[1]   This does not vest any actual title in the mortgagee, and is not inconsistent with the right of the mortgagors, or their creditors who may acquire

---

[1] The mortgage authorized the mortgagee to take possession forthwith, and, in addition to the usual power of sale upon default, contained the following provision:   "If, however, said second party shall deem it more advantageous to sell said property, or any part thereof, at private sale or in the usual course of trade, he is hereby expressly authorized to make such private sale or to sell in the usual course of trade, retaining and applying the proceeds to the liquidation of the indebtedness hereby secured, as hereinbefore mentioned."

liens, to redeem at any time. The provision confers no power upon the mortgagee to reinvest the proceeds of the sales, or apply them to any other purpose than the satisfaction of the secured claims. The case is not at all analogous to *Kendall v. Bishop*, 76 Mich. 634. In that case the mortgagee was empowered to reinvest the trust funds, and add to the stock.

The court below was of opinion that the mortgage was not void upon its face, and submitted the question of fraud to the jury. The trial resulted in a verdict for the plaintiffs. The questions presented by the appellant's counsel relate to proceedings at the trial. We do not think the court erred in proceeding to a trial of the case. The defendant waived his right to have the case tried at the term at which judgment was rendered against the principal defendants by noticing the case for a subsequent term, and in that term consented that the case be continued. Having waived the statutory right, the case must thereafter proceed as other issues of fact, subject to notice by either party.

Error is assigned upon a ruling of the circuit judge admitting proofs of the contents of the books of Rosenthal Bros. Two grounds are urged against the admissibility of the testimony offered: First, that the original books themselves were mere hearsay, in a suit against Gates L. Rosenthal; and, second, that the secondary evidence admitted was improperly obtained, and therefore it should have been excluded. As to the admissibility of the books themselves, we think the court was not in error. The testimony tended to show that defendant had previously been connected with Rosenthal Bros., and severed his connection with them in 1890; that between the 1st day of January, 1892, and the 1st day of June, Rosenthal Bros. had purchased very largely, their purchases amounting to $18,000; that defendant had, after severing his connection

with the firm, kept some track of the business; that when he took the mortgage in June, 1892, as trustee, he went through the form of taking possession, but continued Rosenthal Bros. in actual charge of the business; that the stock was subsequently sold by the mortgagee, and bid in by him in form, but that Rosenthal Bros. still continued in actual possession; that in taking the mortgage he assumed to act as trustee for certain named creditors, who it does not appear were present; and the jury might well have found that he would, as a reasonably prudent man, before assuming to act as trustee, inform himself as to the state of these creditors' claims by reference to the books of Rosenthal Bros., especially in view of his previous knowledge of their business. The books in fact tended to show that no such indebtedness as that claimed to exist in favor of Rosen Bros. and Kersberg was ever created. This testimony was certainly competent as showing a fraudulent intent on the part of Rosenthal Bros. *Koch v. Lyon,* 82 Mich. 513. And we think, in view of the fact that the defendant undertook to act as trustee for other alleged creditors, it is a fair inference that he would inform himself by reference to the books as to the state of their claims, and the books were some evidence of *mala fides* on his part. See *Loos v. Wilkinson,* 110 N. Y. 212. See, also, *Ganther v. Jenks & Co.,* 76 Mich. 510.

The information of the witness who gave evidence of the contents of the books was obtained while the books were in possession of the sheriff under an unauthorized attachment; and in *Rosenthal v. Circuit Judge,* 98 Mich. 208, we held that the attorney should be required to deliver up any memorandum which he had made, relating to the contents of the books, thus righting a wrong committed by a misuse of the process of the court, as far as practicable. But the attorney who obtained the information was not acting in the present case at the time the

attachment in question was sued out or the information obtained. The question, therefore, is whether one who is in no way responsible for the tort by which the information was obtained by a witness may introduce evidence of the facts ascertained, even though a trespass or wrong was committed by the witness in obtaining the information. We think such testimony is admissible. It is not the policy of the courts, nor is it practicable, to pause in the trial of a cause, and open up a collateral inquiry upon the question of whether a wrong has been committed in obtaining the information which a witness possesses. The cases have gone to great length upon this subject. In *Legatt v. Tollervey,* 14 East, 302, it was held that, upon the offer to prove at the trial of a cause the original record of an indictment and acquittal, or a true copy thereof, such evidence must be received, though there was no order of court or fiat of the attorney general allowing the plaintiff a copy of such record, and though the officer who, without such authority, produced the record, or gave a copy of it to the party, is answerable for contempt of court in so doing. This has become a leading case, and is cited in 1 Greenl. Ev. § 254*a*, in support of the doctrine of the text that, though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility, if they are pertinent to the issue; that the court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it frame an issue to determine that question. The doctrine is also fully supported by *State v. Mathers,* 64 Vt. 101; *Com. v. Dana,* 2 Metc. 329; *Com. v. Tibbetts,* 157 Mass. 519.

One other assignment of error remains to be noticed. In the closing address to the jury, counsel for plaintiffs used the following language:

"These men of Jerusalem, that have got the evidence in their possession as to the truth or falsity of this claim, their mouths are sealed, and a padlock upon each one."

Counsel for defendant interposed, saying:

"We take an exception to the statement of counsel. There is nothing in this case to show any such thing."

Plaintiffs' counsel replied:

"I presume very likely that you deny your nationality. I haven't any doubt of it.

"*The Court:* I don't think that you should have used that language at all.

"*Plaintiffs' Counsel:* Men from Jerusalem?

"*The Court:*. I don't think you should have used it.
*    *    *    *    *    *    *    *    *    *    *

"*Plaintiffs' Counsel:* Take it back then. Suppose they came from Podunk instead of Jerusalem. I don't care where they came from."

Further on, plaintiffs' counsel proceeded:

"I would like to have before you the conversation between the Rosenthals, Gates L. Rosenthal, Rosen brothers, and the men that drew the mortgage in this case.    *    *    * You know how they do it. They attempt to fail, put the property in somebody else's possession, in somebody else's name, and then they go to a creditor and say: 'Will you take twenty-five cents on the dollar? Twenty-five cents we will give you. That is right. Just so fine, you know, just so slick as the paper on the wall. Take your twenty-five cents on the dollar.' That is the way they do it,—so fine, so slick [caricaturing the speech and gestures of Jews]."

And, further on:

"Did you ever know any of these kind of fellows that was a laboring man, in your life? I want you to think about that. I ask you if you ever saw one of these fellows. in your life that was shoveling sand upon the railroad."

And, further on:

"I want to put it into your memories, gentlemen of the jury,—I want to know if you ever met a man of that kind in your life that was a laboring man. Go back over your past life, and every place you have lived in your life,

and call to mind if you can name a man of that stamp that was ever a laboring man. Forty years of my life have gone, and I haven't discovered that one yet. Maybe you have. You don't find them doing that kind of business. They are putting up games and schemes,—just so nice as the paper on the wall; that is what they are doing [caricaturing the speech and gestures of Jews].

"*Counsel for Defendant:* We take an exception to the line of argument.

"*Plaintiffs' Counsel* (proceeding): And they are doing it all over this country, and have been doing it."

When it is considered that the defendant was not even a witness on his own behalf, and that neither of the Rosenthal brothers was sworn, it is apparent that the only purpose of this line of argument was to impress the jury with the belief that the nationality of the defendants should be taken as evidence against them. This is certainly not the policy of the law. The courts are open to aliens and citizens alike; and any attempt, by arousing the prejudice of jurors, to curtail this right, is a departure from the proper privilege of counsel, and, when carried to the extent indicated by the language quoted, is sufficient to justify a reversal of the case. It is unnecessary to cite cases decided by this Court in which the privilege of counsel in arguing cases has been considered. It is enough to say that the Court will not regard captious objections to arguments, and will allow something for the zeal of counsel, and will hesitate in any case to consider that counsel have intentionally transgressed the rule. But where the language is such as evinces a studied purpose to arouse the prejudice of the jury, based upon facts not in the case, we cannot overlook it, or consider that a party against whom such effort has been made has had a fair consideration of his case at the hands of the jury.

We think, for this reason, the case should be reversed, and a new trial ordered.

The other Justices concurred.