## SCHLOSS *v.* ESTEY.

1. FRAUDULENT CONVEYANCES — SALE OF GOODS — EXCESS OF VALUE OVER PURCHASE PRICE.

   The fact that a stock of goods was sold by an insolvent debtor for an amount appreciably less than its value does not conclusively establish the fraudulent character of the transaction as to one from whom a part of the goods were fraudulently purchased by the debtor.

2. SALE—FRAUD—BONA FIDE TRANSFEREE.

   Goods fraudulently purchased cannot be recovered by the vendor from one who has bought them in good faith and for value from the vendee.

3. TRIAL—ORDER OF PROOF.

   Where evidence offered at the very commencement of a trial was excluded by the court with the remark, "I think you had

better pass that for the present," and the attention of the court was not again called to it, counsel is not in a position to assign error thereon, since the court has the right to direct the order of proof.

4. Witnesses—Estimate of Value of Goods.

A refusal to permit a witness to give the value of goods on the first floor of a store is not prejudicial, where it is not contended that this would enable the witness to fix the value of the whole stock, which is the fact in issue.

5. Same—Interest in Suit.

Plaintiff in replevin to recover possession of goods purchased through fraud by one defendant and sold by him to another defendant before the commencement of the suit may be cross-examined as to the several times and cases in which he has testified in regard to the title to the goods in suit, for the purpose of showing his interest in the controversy and in the subject-matter involved, and his anxiety to bring it to a successful issue.

6. Trial—Objection to Evidence—Estoppel to Raise Question on Appeal.

In replevin for a stock of goods, plaintiff's witness testified on cross-examination that, at a time referred to in his direct examination, he knew that defendant E. claimed to own the stock and was in possession. He was then asked, "You knew, then, that defendants H. and B. were not claiming to be in possession, did you not?" Plaintiff's counsel objected to the question as incompetent, "for the reason that witness has not testified to any possession by either H. or B." All of the testimony of the witness which was claimed to have established the possession of H. was thereupon stricken out. *Held*, that counsel, by his objection to the cross-examination, estopped himself from claiming that the testimony stricken out was competent as having a tendency to show possession in H.

7. Same—Conduct of Counsel—Discretion of Court.

The trial court may, in its discretion, permit a party to be called from the witness stand during cross-examination, and consulted by his counsel, and immediately recalled.

8. Evidence—Letter Found in Street—Admissibility.

The fact that a brother of plaintiff's counsel, upon finding in the street a sealed envelope containing a letter from one of the defendants, placed the same in the hands of such counsel, instead of forwarding it to another of the defendants, to

whom it was addressed, did not deprive the plaintiff of the right to introduce the letter in evidence.

9. SAME—REJECTION OF COMPETENT TESTIMONY—WHEN CURED BY VERDICT.

    The exclusion of such letter was harmless error where the jury found against the only one of the defendants against whom it would have been competent.

Error to Clinton; Daboll, J. Submitted June 18, 1897. Decided September 23, 1897.

Replevin by Emanuel Schloss, Albert W. Schloss, and Louis Strasburger against David M. Estey, Hiram M. High, and John M. Bryson. From a judgment for defendants, plaintiffs bring error. Affirmed.

*Lyon & Dooling* (*Julian G. Dickinson*, of counsel), for appellants.

*Fedewa & Walbridge* and *Will H. Brunson*, for appellees.

LONG, C. J. In 1893 the plaintiffs were manufacturers and wholesale dealers of clothing at Detroit. Defendant Bryson at that time was engaged as a retail dealer in clothing and also a manufacturer of comforters at Ovid. In the fore part of May of that year, Mr. Pilmore, the agent of plaintiffs, sold to Bryson a quantity of goods, consisting of clothing, to the amount of $862.25. The goods were shipped the last of August, and received by him. On the 13th of September plaintiffs commenced this action of replevin to recover possession of the goods, and took upon the writ all but about $30 worth. The grounds upon which they claimed the right to recover were that Bryson had not acquired title to the goods, as he had made false and fraudulent representations to the plaintiffs' agent as to his financial standing at and prior to the time he ordered them, which representations had been relied upon in making the sale; and also that Bryson was financially insolvent at the time of the sale, and did

not intend to pay for the goods at the time he ordered and received them. Plaintiffs introduced testimony tending to show that Pilmore had been acquainted with and had sold goods to Bryson for about five or six years before the sale in question, and that Bryson, before this sale was made, represented to Pilmore that he owned a certain brick store in the village of Ovid, known as the "Lambie, Clark & Hulse Store," of the value of $3,000 to $4,000, and also that he owned the residence property where he lived, valued at $5,000. Testimony was also introduced tending to show that Bryson had made like representations to the agent of another wholesale firm, and by such representations secured about $1,000 worth of goods. It was also claimed upon the trial that Bryson had purchased from various other wholesale dealers a large quantity of goods, to the amount of about $12,000, which he received during the 60 days immediately before his failure, so that he had at the time of his failure (September 9, 1893) from $17,000 to $23,000 worth of goods in his possession in the village of Ovid.

Plaintiffs also claimed that, previous to the shipment of their goods and the failure of Bryson, he held out through his own representations and those of co-defendant High, an attorney at Ovid, that he was solvent, and able to pay five dollars for every one he owed. The only evidence in the record as to representations made by defendant High is contained in two or three letters, the first one written August 24th, to the Chicago Kid Glove Manufacturing Company, in response to its inquiry, and states: "He carries a stock of dry goods and gents' furnishings. The estimated value of the stock is $12,000, and is free from all incumbrance. * * * I, personally, do not know how much he is owing. I do not think that debts press him in the least." The next letter written by High was in answer to one from the Merchants' & Manufacturers' Exchange at Detroit, dated September 8, 1893, in which that exchange asked that it be given in confidence such information "as you can" in regard to the responsibility,

general standing, past history, etc., of Bryson. To this High answered: "Stock of about $15,000, clear, but I think he is in debt somewhat; has good, fair business; refuses to make statement." September 11th following, High wrote the exchange that Bryson had given him as trustee a mortgage for $5,437.95; that the mortgage covered the entire stock and business in trade to secure $1,000 to High individually, $1,000 to the First National Bank of Ovid, $2,000 to the Oakland County Savings Bank, and the balance to S. Simon & Company, of Detroit. High added to this letter, "This morning Mr. Bryson gave a bill of sale to D. M. Estey, of Owosso; consideraiton, $9,100." It appears that Mr. Estey, who is the father-in-law of Bryson, on August 28th, in response to an inquiry in regard to Bryson from the Bradstreet Company, wrote that company: "I simply helped Mr. Bryson pay some of his obligations. I am not backing him in any other way. I helped him to pay some of his bills last fall, and some since the financial stringency; but from this on I expect him to be able to take care of himself."

It is claimed by the plaintiffs that after Bryson received this large quantity of goods from different wholesale dealers, and before his failure, he removed the tickets from the goods, and had some tickets of his own printed and put upon the goods, and that this was done for the purpose of destroying their identity; that these tickets were put by Bryson upon all of the goods, except those which were kept on the second floor of the store. It appears that upon Monday morning, September 11th, a bill of sale was made by Bryson to defendant Estey, the consideration being stated in it as $9,100. The chattel mortgage to High had been placed on file in the township clerk's office on the Saturday night previous. Mr. Estey claims to have gone into immediate possession of the property under his bill of sale, with an agreement with Bryson to pay the chattel mortgage given to High. It was claimed further on the trial, by the plaintiffs, that

114 MICH.—28.

the chattel mortgage given to High was largely in excess of what was actually due to him, aside from that securing other creditors; that the bill of sale to Mr. Estey was also given for a larger amount than that due him, and that the stock of goods which it covered, at that time, was of the value of some $17,000; and that the bill of sale and the chattel mortgage were given for the purpose of assisting Bryson to cover up his property, with intent to cheat and defraud the unsecured creditors. Some testimony was also given by the plaintiffs tending to show that Bryson, Estey, and High made an effort to compromise and settle some of the claims, which the plaintiffs now contend was further evidence of fraud upon their part as against the general creditors. It was also claimed by the plaintiffs that all three of the defendants were in possession of the property at the time the plaintiffs claimed the goods in controversy. It was further insisted that, even though they were not in possession of the goods jointly, yet there was a conspiracy among the three to assist Bryson to cheat and defraud his creditors.

On the other hand, it was contended by the defendants that the evidence is undisputed that Bryson did own the house referred to by Mr. Pilmore in his testimony, and that the testimony in reference to the ownership of the store was contradicted by several witnesses, so that it became a question for the jury to determine whether any false representations were made by Mr. Bryson. Defendants further claimed on the trial that the total amount of goods received by Mr. Bryson during the 60 days before his failure did not exceed $7,000, and that at that time Bryson was indebted for goods in the amount of about $3,000. It was explained by the defendants on the trial that the reason of putting the new numbers on the goods was that Bryson's store at Laingsburg had been broken into by burglars, and the lot numbers pulled off of some of the goods; that these goods were afterwards removed to Ovid, and new numbers put on them. Bryson testified that he was not insolvent when he bought and received

the goods; that he intended to pay for them, and that, if he had been left alone, he could have carried his business through; that there was a panic in August of that year; sales were not as good as expected; that he counter-manded orders for goods that were about to be shipped to him to the amount of about $3,000; and that $610 worth ·of these goods were ordered from the plaintiffs in this case, and the order for the same countermanded.

Defendants claimed further, and gave testimony tend-ing to show, that the amount of the chattel mortgage given to High was for a *bona fide* indebtedness. The ·only claim made by the plaintiffs was that the $1,000 put in the mortgage for Mr. High was excessive. This was explained by High, that he was to be paid $25 as a re-tainer fee from Bryson, and that his services as trustee under the mortgage were fixed at $175 and put in the mortgage; that the balance was a *bona fide* indebtedness. So far as Mr. Estey's connection with the case ·is con-·cerned, it appears by the testimony of defendants that, in the fall before this mortgage was given, Mr. Estey had ·become indebted as an indorser upon some of Mr. Bryson's paper. He had further indorsed for Bryson in the fol-lowing spring. Hearing of the giving of the chattel mortgage to High, Mr. Estey claims that he insisted to Bryson that his claim should be taken care of; that, as a result of the talk between them, the bill of sale was given, and Estey agreed to pay Bryson $9,100 for the stock, and pay the chattel mortgage to High; that, on figuring the .amount due to Estey from Bryson,' it was found to be $9,062.84. The difference of $37.16 Mr. Estey gave his check for to Bryson. Defendants gave testimony tend-ing to show that the value of the goods did not exceed the amount paid for them by Mr. Estey, which amount, including the High mortgage, was about $14,600. It is claimed by the defendants that every dollar of this went to pay the *bona fide* indebtedness of Mr. Bryson. The jury returned a verdict in the case in favor of defendant Estey for the sum of $950.35, being the full value of the

goods taken by the plaintiffs. They also found by their verdict that defendants High and Bryson were not in possession of the goods, as claimed, at the time of suing out the writ of replevin. Judgment was rendered in favor of Estey for the amount of the goods, and for costs in favor of all the defendants against the plaintiffs.

There are many assignments of error contained in the record, relating to the testimony as given, to the refusal of the court to admit certain testimony, the refusal to give plaintiffs' requests to charge, to the requests of the defendants given, and to certain portions of the general charge. We shall treat of such assignments of error as we think merit attention; the others will be passed over without remark; but all of them have received careful consideration.

The court directed the jury that if they found that Bryson made the false representations as claimed, and that plaintiffs relied upon them, and that they were thereby induced to make the sale of the goods, then the sale, as between plaintiffs and Bryson, was void; or if they found that Bryson was insolvent at that time, and purchased the goods with the intention of not paying for them, then such sale would be void; also, that if High and Estey knew of this fraud on the part of Bryson, and participated in it, or had such knowledge or information about it that would put a reasonably prudent man on inquiry, they could get no better title than Bryson. Upon the question of Mr. Estey's good faith in making the purchase, the court instructed the jury:

"If you find that the value of the goods was greatly in excess of that [the amount that Estey paid, $14,600], or in excess of that to any appreciable extent, as a matter of fact you would have a right to take that into consideration as bearing upon the question as to whether it was in good faith. If all the other conditions were honest, the mere fact of that being in excess might not render it fraudulent; but you should consider that fact as bearing upon that question. I can't say to you that it proves it or establishes it, but, if you say that it is evidence of a fraudulent purpose, you have the right to use it in that direction."

We think this was a proper charge.   It is well to state here that there was no dispute upon the trial that the whole amount claimed to have been paid by Mr. Estey was actually paid or secured, and that he actually assumed and agreed to pay the amount of the High mortgage.   There is nothing upon this record to show but that Mr. Estey believed that the High mortgage was valid. It is also shown that there was something presently paid by Estey upon the execution of the bill of sale, and that he assumed and agreed to pay several thousand dollars of Mr. Bryson's debts.

The jury, after being out for a time, came into court, and stated that they had found a verdict in favor of Estey and High for the value of the goods, and in favor of plaintiffs against Bryson.   The court directed them that, having found a verdict in favor of Estey and High, they could not find against Bryson.   The jury retired, and again returned, saying that they had found for Mr. Estey for $950.35 (the value of the goods and interest), but were unable to agree as to the other defendants.   The court then said to them:

"If you find that Estey got the goods without fraud, and is entitled to hold them, then your verdict should be for High and Bryson also; but you would not find any sum as damages in favor of the other defendants, they not claiming to be in possession, and not asking for anything except a finding of no cause of action, which would simply in this case say they were not in possession of the goods, but that Estey was, and was entitled to hold them."

The jury thereafter so found.   We discover no error in this charge.   From what took place, and what was said to the court by the jury, it is evident that they found Bryson guilty of the fraud; that they did not believe that either High or Estey participated in it or was conversant with it; that they found Estey's purchase was in good faith and for a sufficient consideration, and that the chattel mortgage held by High was given in good faith and to secure a *bona fide* indebtedness.

But counsel contend that the court was in error in not giving certain requests to charge. The second request had relation to the fraud perpetrated upon plaintiffs by Bryson, and was sufficiently covered by the charge as given. The sixth request also related to the same subject. But we may add that the jury did find Bryson guilty of fraud, so that the plaintiffs were in no manner injured by this refusal. The ninth request, which was also refused, had reference to the acts of Estey and High, and their knowledge or want of knowledge of the fraudulent conduct of Bryson, and was fully covered by that portion of the charge already quoted. The request in relation to the chattel mortgage was also sufficiently covered by the general charge. In fact, after an examination of the requests refused and the general charge of the court, we are satisfied that no error was committed. The requests were all given in substance, and were sufficiently covered by the general charge, so far as the plaintiffs were entitled to have them given. The general charge very fully stated the law of the case, and, under the facts shown, there was apparently but one important question in it, and that was whether Estey was a good-faith purchaser. That the court fairly submitted to the jury.

The question of Mr. Bryson's conduct is raised by many of the assignments of error, but it has but little place here in this court. If Mr. Estey bought the goods in good faith, paying substantially for them all they were worth, —that is, if he bought them with no information or knowledge of the fraud of Bryson, and was in possession of them as a good-faith purchaser at the time of suing out the writ of replevin,—the verdict should have been in his favor, whatever may have been the misconduct of Bryson in purchasing them.

It is claimed that the court erred in refusing to permit witness Strasburger, one of the plaintiffs, to testify to defendant High's statements as to his authority, and who authorized him, to offer 25 cents on the dollar in settlement of plaintiffs' claim. Witness had testified that he had

gone from Detroit to Ovid on the day before the writ was issued, and at once had a talk with High in reference to the Bryson matter, in which High said, "I think I can fix this thing up. I think I can give you 25 cents on the dollar." He was then asked, "Did he say anything further at that time as to whether or not he was authorized to offer 25 cents, and, if so, who authorized him?" While counsel contend that this was ruled out, yet the record shows that the court stated, "I think you had better pass that for the present," and it was passed; counsel for plaintiffs saying, "Exception." Even if this testimony were competent, we think counsel not in a position to assign error upon it. This was at the very commencement of the trial, and the attention of the court was not called to it again, so far as shown by this record. The court had the right to direct the order of proof.

Mr. Strasburger was asked the value of the goods on the first floor of the Bryson store, and the question was ruled out. We think there was no prejudicial error in this, even if the testimony was competent. The inquiry was proper and pertinent as to the value of the whole stock, and this the plaintiffs were permitted to go into fully. It was not claimed by counsel at that time that this would enable the witness to fix the value of the whole stock.

The witness was asked on cross-examination as to the several times and cases in which he had testified in regard to the title to the goods transferred to Estey by Bryson. It is contended that the inquiry was not made for the purpose of showing that there were any contradictory statements made by the witness, and that therefore it was incompetent. Counsel cite *Brennan* v. *Busch*, 67 Mich. 670, in support of that contention. In that case, however, it appears that the inquiry was as to how many cases the witness had had in the Supreme Court. The inquiry was general, and had no reference to the case then on trial. Here the inquiry was addressed to plaintiff's interest in this very controversy, his interest in the subject-

matter involved, and his anxiety to bring it to a successful issue. It was competent for that purpose.

It is also contended that the court was in error in striking out the testimony of the witness Solomon. It appears that Solomon had shipped goods to Bryson to the amount of about $500 before the failure. He went to Ovid the day before the writ in the present case was issued, and took out a writ of replevin for his goods. He testifies that, when he had his goods selected, defendant High came to him and said: "You have got a very good case. You go and take your goods and go home. I will settle with you;" that High was chatting with different persons in the store, looking over goods, and said again, "They will get their hands burned by taking these goods." Counsel for plaintiffs now contend that this was competent as showing that High was in possession. If the case stood as contended by counsel for plaintiffs, it would appear that this testimony was competent. But we must consider the matter as it arose upon the trial. On cross-examination the witness was asked by counsel for defendants:

"'You knew when you were in Ovid that Estey was claiming to own the stock and was in possession of the stock?

"A. I suppose so; yes.

"Q. You knew, then, as a matter of fact, that High and Bryson were not claiming to be in possession of the stock, did you not?

"Counsel for Plaintiffs: I object to that as incompetent and improper, for the reason that this witness has not testified to any possession by either High or Bryson; in fact, he disclaims any conversation in reference to that, and this must necessarily be hearsay evidence."

After some colloquy between court and counsel, the court said: "I think I will strike out this evidence which you claim establishes possession in Mr. High, as to what transpired there in the store, until such time as you put in evidence that makes it competent." On the trial, therefore, counsel claimed to the court that the witness

had not testified to any possession by either Bryson or High, and in fact that the witness disclaimed any conversation in reference to it. After this statement, counsel cannot now be permitted in this court to make such a claim.

It is claimed the court erred in refusing to allow plaintiffs to show by Bryson that he settled another claim upon a small percentage. We think this ruling could not have prejudiced the plaintiffs. The jury found that Estey was in possession; that his purchase was valid; and also found that Bryson was guilty of fraud, but that Estey was in no manner connected with it, as they found him entitled to a verdict for the value of the goods.

Some claim is made that the court èrred in permitting Bryson to be called by his counsel from the witness stand during his cross-examination as a witness, consulted by his counsel, and then immediately recalled. We have read this part of the record with some care, and do not think there is anything in the question calling for comment. The trial court has some discretion in these matters. We cannot say that it has been abused in this instance.

It is contended that the court erred in permitting defendants' counsel to interrogate the witness Bryson in reference to Exhibit 7—J, and in removing him from the witness stand, and allowing counsel to call defendant High, and show by him the circumstances under which plaintiffs' counsel obtained possession of Exhibit 7—J, and in refusing to receive such exhibit in evidence. The objection of counsel for defendants was that the manner in which it came into the hands of counsel for plaintiffs precluded them from using it as evidence; and upon this theory the court ruled it out. It appears that this exhibit was a writing made by Mr. Bryson, put in an envelope, sealed up, and addressed to Mr. Hiram M. High. The testimony shows that the letter was picked up on the street by the brother of one of plaintiffs' counsel, an attorney at law, and engaged in the office with plaintiffs' coun-

sel. He placed the letter in the hands of plaintiffs' counsel, instead of giving or sending it to Mr. High, to whom it was addressed. Counsel kept it until defendant Bryson was called to the witness stand, and then presented it to him for identification, and thereafter offered it in evidence. It appears to be conceded that Mr. High never saw it until it was offered in evidence. It was shown to be sealed when it left Mr. Bryson's hands. While we think the paper was competent evidence against Bryson, and should have been admitted in evidence, yet we are unable to see how its rejection, under the circumstances, could have prejudiced the plaintiffs' case. Without it the jury convicted Bryson of making a fraudulent purchase, and the letter could not have had any weight in determining the question of Mr. Estey's good faith.

We are satisfied that the case was fairly tried, and we find no error in it prejudicial to the plaintiffs.

The judgment must be affirmed.

The other Justices concurred.