PEOPLE *v.* WINTERHELD.

1. SEARCHES AND SEIZURES—EVIDENCE UNLAWFULLY SEIZED IN AN-
   OTHER STATE—FEDERAL QUESTION.
   Determination of the question of whether evidence obtained
   through unlawful search and seizure in another State, by its
   officers, is admissible in a criminal case in this State or sup-
   pressible on motion seasonably made before trial does not
   present a Federal question under Fourth and Fourteenth
   Amendments to the Constitution of the United States.

2. SAME—EXCLUSION OF EVIDENCE.
   The court-created exclusionary rule that evidence unlawfully
   seized in this State, by officers of this State, must, upon timely
   application before trial, be returned to the person from whom
   seized, and that it is then inadmissible in evidence in a criminal
   case does not extend to evidence obtained by unlawful seizure
   in another State by officers of that State, as our Constitution
   has no extraterritorial effect (Const 1908, art 2, § 10).

3. EVIDENCE—UNLAWFUL SEIZURE IN ANOTHER STATE—ADMISSIBILITY.
   Evidence unlawfully seized in another State by officers of that
   State is not inadmissible in a criminal case in this State by
   reason of such unlawful seizure, the protection afforded by
   our State Constitution against use of unlawfully seized evi-
   dence being limited to the territorial limits of the State (Const
   1908, art 2, § 10).

Appeal from Kalamazoo; Fox (Raymond W.), J.
Submitted October 15, 1959. (Docket No. 92, Calen-
dar No. 47,955.)  Decided April 12, 1960.

REFERENCES FOR POINTS IN HEADNOTES
[1] 54 Am Jur, United States Courts § 45.
[2, 3] 20 Am Jur, Evidence § 397.
  Modern status of rule governing admissibility of evidence ob-
  tained by unlawful search and seizure.  50 ALR2d 531.

Leonard Winterheld and Robert Winterheld were convicted of breaking and entering in the nighttime. Affirmed.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *Jacob A. Dalm, Jr.,* for the people.

*Garry E. Brown,* for defendants.

Dethmers, C. J. Is evidence obtained through unlawful search and seizure in another State, by its officers, admissible in a criminal case in this State, or should it be suppressed on motion seasonably made before trial?

A Federal question, under the 4th and 14th Amendments to the Constitution of the United States is not presented. *Wolf* v. *Colorado,* 338 US 25 (69 S Ct 1359, 93 L ed 1782); *Irvine* v. *California,* 347 US 128 (74 S Ct 381, 98 L ed 561). As for *Rea* v. *United States,* 350 US 214 (76 S Ct 292, 100 L ed 233), in which it was held that a Federal district court, upon application, should have enjoined a Federal agent from transferring to State officers or testifying, in a State criminal prosecution, concerning evidence he had secured through unlawful search and seizure, it has no Federal application to a case in which the offer of unlawfully obtained evidence in a State prosecution is by an officer of that or another State, as abundantly appears from the reasoning in that case and in *Stefanelli* v. *Minard,* 342 US 117 (72 S Ct 118, 96 L ed 138).

Michigan Constitution of 1908, art 2, § 10, contains a guarantee of security from unreasonable search and seizure. In *People* v. *Marxhausen,* 204 Mich 559 (3 ALR 1505), this Court adopted the Federal exclusionary rule anounced in *Weeks* v. *United States,* 232 US 383 (34 S Ct 341, 58 L ed 652, LRA1915B,

834), by holding that evidence unlawfully seized in
this State, by officers of this State, must, upon timely
application before trial, be returned to the person
from whom seized and, hence, that the same is, then,
inadmissible in evidence in a criminal case in this
State.

Should this exclusionary rule be extended, in crim-
inal cases in this State, to evidence obtained through
search and seizure in another State, unlawful both
in that State and this, by officers of that State?
There is no exact precedent in this State. Cited by
defendants, as authority for an affirmative answer,
are *State* v. *Rebasti,* 306 Mo 336 (267 SW 858), and
*State* v. *Hiteshew,* 42 Wyo 147 (292 P 2), involving
use in State courts of evidence unlawfully obtained
by Federal officers, in which decisions turned largely
on considerations of Federal constitutional rights,
not here involved, and also *Little* v. *State,* 171 Miss
818 (159 So 103), decided on the theory, con-
sidered in *Hiteshew,* that Federal officers are, in
effect, also State officers. We do not consider these
decisions of material aid to defendants' position. No
cases are cited holding evidence unlawfully obtained
in one State by its officers to be inadmissible in a
criminal case in another State. Holding in the neg-
ative are *Young* v. *Commonwealth* (Ky), 313 SW2d
580, *Kaufman* v. *State,* 189 Tenn 315 (225 SW2d 75),
*State* v. *Olsen,* 212 Or 191 (317 P2d 938), *People* v.
*Touhy,* 361 Ill 332 (197 NE 849), *Walker* v. *Penner,*
190 Or 542 (227 P2d 316), and *State* v. *Wills,* 91 W
Va 659 (114 SE 261, 24 ALR 1398). The subject
is fully annotated in 50 ALR2d, § 9, p 570 *et seq.*
The weight of the authority is clearly that the ex-
clusionary rule is not extended to these circum-
stances. We think the reasoning in the cases so
holding to be sound.

In *Young* v. *Commonwealth, supra,* the Kentucky court said:

"In Kentucky we have long held that evidence obtained by officers of this State as a result of an illegal search made in this State is inadmissible at the trial of the person whose constitutional rights were violated by the search."

Speaking of the exclusionary rule just above recognized, the Kentucky court went on to say:

"The rule, then, is founded upon a violation of the Kentucky Constitution by Kentucky officers, and is a major part of the intended protection against illegal search and seizure. Without encroachment upon our constitutional guaranty we lose the reason for the rule. There can be no violation of section 10 except within the territorial limits of this State and by officers of this State. In the present case neither locale nor officer can pass the qualifying test and we must therefore hold that there has been no constitutional violation upon which to lay the rule."

In *Kaufman* v. *State, supra,* the Tennessee court said (pp 319–321):

"Our Constitution has no extraterritorial effect. Moreover, as pointed out by the State's counsel, the principle of law which forbids the admissibility of evidence obtained by reason of any unlawful search does not proceed from any statutory prohibition, but is a judicial pronouncement for the preservation of constitutional rights of the citizens of Tennessee. * * *

"The weight of authority seems to sustain the State's insistence that the evidence to be excluded must have been obtained unlawfully by officers of the jurisdiction in which it is sought to be offered. 24 ALR 1408, 1424; 32 ALR 408, 414; 88 ALR 348, 362; 134 ALR 819, 827; and 150 ALR 566, 576. Most

if not all the cases referred to in the annotations in ALR above cited hold that evidence obtained as a result of an unlawful search by State officers is admissible in Federal courts. State officers seem to be considered as strangers to the administration of justice in the Federal courts, or at least they are private citizens having no recognized official status.  *  *  *

"We think that inasmuch as the Arkansas highway police were not in any way amenable to our laws in arresting and searching defendants in their automobile, their authority to make the search cannot be made the subject of an investigation by the courts of this State."

The Michigan constitutional guarantee makes no express provision for the exclusionary rule. The rule is court-created and designed to effectuate the guarantees of the Constitution of this State. With respect to acts beyond its borders, by officers of another State, such guarantees do not extend to them and, hence, the reason for the rule in that regard disappears and, with it, the rule.

Michigan cases casting some light on this Court's views concerning this general subject are *Cluett* v. *Rosenthal,* 100 Mich 193 (43 Am St Rep 446), and *Schloss* v. *Estey,* 114 Mich 429. Both are civil cases. In *Cluett* it was held that:

"One who is in no way responsible for the tort by which information has been obtained by a witness may introduce evidence of the facts ascertained, even though a trespass or wrong was committed by the witness in obtaining the information." (Syllabus 2.)

*Schloss* is of like import. See, also, *O'Toole* v. *Ohio German Fire Insurance Co.,* 159 Mich 187 (24 LRA NS 802). While these cases are not conclusive of the question before us, their slant is in the direction of the majority view herein considered.

· Order denying motion to suppress and conviction affirmed.

Carr, Kelly, Smith, Black, Edwards, and Kavanagh, JJ., concurred.

. Souris, J., took no part in the decision of this case.