*In re* PALMER.

CRIMINAL LAW—RIGHT TO COUNSEL.

> Defendant who had been sentenced to life imprisonment for second-degree murder in 1942 and denied a new trial in 1952, under record showing he did not have counsel, had not been advised of his right to counsel, and had not expressly waived such right before pleading guilty to felony *held,* entitled, after 1963 decision of the supreme court of the United States, to discharge from imprisonment under sentence imposed (CL 1948, § 750.317).

Original habeas corpus by Edward J. Palmer directed to prison warden, with ancillary writ of certiorari to Macomb county circuit court, to test validity of sentence for second-degree murder. Submitted March 8, 1963. (Calendar No. 97, Docket No. 50,044.) Petitioner discharged from imposed sentence December 2, 1963, and remanded to sheriff of Macomb county for further proceedings.

*Edward J. Palmer, in propria persona.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James R. Ramsey* and *Donald T. Kane,* Assistant Attorneys General, for the people.

*Amici curiae:*

State Bar of Michigan Committee on Civil Liberties, by *William H. Culver,* Chairman, *Justin L.*

REFERENCES FOR POINTS IN HEADNOTE
14 Am Jur, Criminal Law §§ 167, 173.

*Brocato, Avern L. Cohn* and *Rolland R. O'Hare,* of counsel.

State Bar of Michigan Committee on Criminal Jurisprudence, by *Leo A. Farhat,* Chairman, and *Samuel J. Torina.*

KAVANAGH, J. By grant of a petition for a writ of habeas corpus and ancillary writ of certiorari we here review the proceedings of December 1, 1942, which resulted in the sentencing of petitioner by the Macomb county circuit court to life imprisonment for second-degree murder.[1]

At the time the crime was committed, September 26, 1942, petitioner was an escapee from the State Prison of Southern Michigan at Jackson. Subsequently apprehended in Georgia, he was returned to Jackson where, on November 24, 1942, he was questioned by an assistant prosecutor of Macomb county and a trooper of the Michigan State police in the presence of a stenographer. Petitioner admitted committing the offense.

On December 1, 1942, petitioner was picked up at Jackson prison at 8:30 a.m., and taken by car to Mt. Clemens. He waived examination in justice court, was arraigned in circuit court, pleaded guilty, and, after a hearing to determine the degree of murder, was sentenced at approximately 12 o'clock noon the same day. At no time during the proceedings was he represented by counsel. The record does not disclose he was advised of his constitutional right to counsel.

Petitioner's plea was made in the following manner:

*Examination by the Court:*
   "*Q.* You understand what you are charged with?
   "*A.* Yes, sir.

---

[1] See CL 1948, § 750.317 (Stat Ann § 28.549).—REPORTER.

"*Q.* How do you want to plead?

"*A.* Guilty.

"*Q.* You plead guilty of your own free will, do you?

"*A.* Yes, sir.

"*Q.* Nobody threatened you or promised you anything?

"*A.* No, sir.

Thereupon Mr. Held (the assistant prosecuting attorney) related the admission made by petitioner:

"*The Court:* Then when did you get a statement on this?

"*Mr. Held:* We were over there last—week ago today 24th.

"*The Court:* That would be November 24th, week ago today.

"*Mr. Held:* Yes, November 24, 1942.

"*The Court:* Have you got this admission there?

"*Mr. Held:* No, it was a stenographic statement that was taken by Josephine Wasil and has not been transcribed as yet.

"*The Court:* You have a summary of it?

"*Mr. Held:* I can tell exactly what he told me over there. The story Mr. Palmer gave me over there was to the effect that he had arrived at the home on the night before this offense took place, stayed there that night and following day, which was the day the offense took place, and after they had spent that night he and Walter Siglow went out of the house and did some work around the barn and after that Edward Palmer was playing with the dog and while he was playing with the dog, Walter Siglow came over and told him not to play with the dog that way, or some words to that effect, and he picked up a stick and hit Edward with it and then threw the stick at Edward here and after that took place Edward took up the stick, which was a piece of wood about 3-1/2 feet long, which was to hold open the garage doors, about 2-1/2 inches in diameter, and he then struck Walter Siglow over the head twice

and across the back once, and he also stated he knew he was going to die. He then tried to get him into the rear end of the trunk, wasn't able to do that, and then dragged him into the place, it isn't exactly a garage, it is more or less a place inside the barn where the car is parked, tried to get him into the back seat, was unable to do that and dragged him out of the barn again, the old barn, and then got into the car and backed the car opposite just where the body was lying and picked him up and put him in the rear seat and started to drive toward Utica and went thought (through) and when he arrived in front of Stanton Welsh Park he had a collision with a truck and he then ran through the Stanton Welsh Park and didn't come back or anything until the time of his apprehension in Georgia. Is that in substance what happened?

"*The Defendant* (Edward J. Palmer): That is true."

The assistant prosecutor, Mr. Held, was then sworn and the following colloquy took place:

"*Q.* The statement you have now made on this statement is the statement you heard the defendant himself make?

"*A.* That is true and that statement was made to myself and Trooper Clifford Goodnuff and stenographer Josephine Wasil, at the Jackson State Prison on November 24th at about 2 o'clock or 2:30 in the afternoon. Before that statement was taken I advised Mr. Palmer of his constitutional rights and after I fully advised him of his rights he expressed willingness and desire to tell me his complete story."

Trooper Goodnuff was sworn and related the admission made by petitioner at the prison. His testimony was substantially the same as that of Mr. Held. It is to be noted that the stenographic record of the questioning of petitioner at Jackson Prison in 1942

has not even today been made a part of the circuit court records.

After questioning petitioner concerning his background, the court sentenced him to life imprisonment.

In 1952 the same circuit court judge denied petitioner's motion for new trial, setting forth reasons therefor in a written opinion. We subsequently denied leave to appeal.

In this attack upon the 1942 proceedings, petitioner's main contention is that he was denied due process of law because the circuit judge failed to advise him of his right to be represented by counsel.

The record does not disclose what "constitutional rights" were explained to petitioner prior to his interrogation. The opinion of the trial judge 10 years later, on denial of motion for new trial without mention of offer or waiver of counsel, lends some weight to petitioner's claim that he was never at any time advised of his right to counsel. The attorney general does not claim that an offer of counsel was made at any time, and we cannot infer an offer from the mere statement that petitioner was advised of his "constitutional rights" at the prison.

We are, therefore, presented with a record void of any mention by the court of right to counsel, the absence of a request for counsel, and a plea of guilty. The presence of these factors does not give rise to a conclusive presumption of waiver. *Rice* v. *Olson,* 324 US 786 (65 S Ct 989, 89 L ed 1367); *Carnley* v. *Cochran,* 369 US 506 (82 S Ct 884, 8 L ed 2d 70). Consistent with an interpretation of the scope of the Fourteenth Amendment, "The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." *Carnley* v. *Cochran, supra,* at page 516. These prerequisites for waiver under

the Fourteenth Amendment conform to the Federal rule under the Sixth Amendment. *Walker* v. *Johnston,* 312 US 275 (61 S Ct 574, 85 L ed 830).

See discussion of this rule as to waiver in *People* v. *Whitsitt,* 359 Mich 656, 663.

However, under the so-called "fair trial" rule enunciated in *Betts* v. *Brady,* 316 US 455, 471 (62 S Ct 1252, 86 L ed 1595), an indigent defendant charged with a noncapital offense in a State court did not have a right under the Federal Constitution to be provided with counsel unless it could be said "by an appraisal of the totality of facts in a given case" that the failure to provide counsel for the particular defendant constituted a "denial of fundamental fairness, shocking to the universal sense of justice." *Betts* at p 462. In all the cases subsequent to *Betts* it was incumbent upon the reviewing court to determine whether the circumstances of the case required the assistance of counsel. As stated in *Uveges* v. *Pennsylvania,* 335 US 437, 441 (69 S Ct 184, 93 L ed 127) :

"Where the gravity of the crime and other factors—such as the age and education of the defendant, the conduct of the court or the prosecuting officials, and the complicated nature of the offense charged and the possible defenses thereto—render criminal proceedings without counsel so apt to result in injustice as to be fundamentally unfair, * * * the accused must have legal assistance under the (Fourteenth) Amendment whether he pleads guilty or elects to stand trial, whether he requests counsel or not."

The record discloses petitioner was 29 years of age at the time of trial. He had completed 8 years of education. He was twice convicted of auto theft and had spent almost the entire previous 10 years in prison. At the trial he confirmed the testimony of

the prosecutor and the State trooper concerning the circumstances of the offense. When asked by the court if he had anything to say, he replied, "No." We believe these factors refute petitioner's contention that he was ignorant of his right to be represented by counsel. Our review of the record does not disclose the presence of technical defenses that would survive a guilty plea voluntarily and knowingly entered.

This case is not unlike *Quicksall* v. *Michigan,* 339 US 660 (70 S Ct 910, 94 L ed 1188) (rehearing denied, 340 US 846 [71 S Ct 13, 95 L ed 620]), wherein the supreme court affirmed the first-degree murder sentence of a 44-year-old defendant, who had served penitentiary terms, admitted killing a woman in pursuance of a suicide pact, and entered a plea of guilty. The supreme court held (p 665):

"The record exacts the holding that the petitioner has failed to sustain the burden of proving such a disregard of fundamental fairness in the imposition of punishment by the State as alone would justify this court to invalidate the sentence by reason of the due process clause."

Had we rendered our decision prior to March 18, 1963, we would end our discussion at this point with the words "Writ dismissed."

On that date, however, the United States supreme court released its opinion in *Gideon* v. *Wainwright,* 372 US 335 (83 S Ct 792, 9 L ed 2d 799), and in so doing buried the "fundamental fairness" rule. *Gideon* announced that the constraint laid by the Sixth Amendment upon the Federal courts expresses a rule so fundamental and essential to a fair trial, and so, to due process of law, that it is made obligatory upon the States by the Fourteenth Amendment. *Gideon* now requires State trial judges to inform defendants charged with felonies of their right to

counsel, and if indigent appoint counsel, unless there is an express waiver. We note that our present Court Rule, GCR 1963, 785.3(1),[2] which has been in effect since 1947,[3] meets the procedural requirement which *Gideon* demands.

In announcing the rule in *Gideon,* the United States supreme court did not enunciate a new constitutional principle, but merely returned to the rule of *Powell* v. *Alabama,* 287 US 45, 68 (53 S Ct 55, 77 L ed 158, 84 ALR 527), where the court held "the right to the aid of counsel is of this fundamental character," which, being included within the protection of the Bill of Rights, is essential to due process and applies through the Fourteenth Amendment to the States. This rule was subsequently affirmed in *Grosjean* v. *American Press Co.,* 297 US 233 (56 S Ct 444, 80 L ed 660), *Johnson* v. *Zerbst,* 304 US 458 (58 S Ct 1019, 82 L ed 1461, 146 ALR 357), *Avery* v. *Alabama,* 308 US 444 (60 S Ct 321, 84 L ed 377), and *Smith* v. *O'Grady,* 312 US 329, (61 S Ct 572, 85 L ed 859), this last opinion in the year 1941.

*Betts* v. *Brady, supra,* limited the rule of law set forth in the above cases with its "fundamental fairness" rule.

*Gideon* repudiated the ruling in *Betts* and restored the previously sound, constitutionally enunciated principle. Justice Black in *Gideon* stated it as follows (p 344):

"The court in *Betts* v. *Brady* made an abrupt break with its own well-considered precedents. In returning to these old precedents, sounder we believe

---

[2] "If the accused is not represented by counsel upon arraignment, before he is required to plead, the court shall advise the accused that he is entitled to a trial by jury and to have counsel, and that in case he is financially unable to provide counsel the court will, if accused so requests, appoint counsel for him. If the accused states he will procure counsel or requests that counsel be appointed, a reasonable time thereafter shall be allowed for counsel to consult with the accused before his plea shall be taken." (GCR 1963, 785.3[1].)

[3] Court Rule 35A, § 1. See 318 Mich xxxix.

than the new, we but restore constitutional principles established to achieve a fair system of justice."

The argument that in applying *Gideon* retroactively we would be opening the jailhouse doors would not be applicable in Michigan. Only the years from 1942[4] to 1947 could be involved, since we have reversed for failure to comply with the requirements of the Court Rule, now GCR 1963, 785.3(1).

The question is whether the rule of *Gideon* is to be given retroactive application to this case. The retroactive operation of judicial decisions is firmly imbedded in the law. As Justice Holmes stated in his dissenting opinion in *Kuhn* v. *Fairmont Coal Co.*, 215 US 349, 372 (30 S Ct 140, 54 L ed 228):

"Judicial decisions have had retrospective operation for near a thousand years."

The rule is stated generally in 7 RCL, Courts, § 36, p 1010, as follows:

"The general principle is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former decision is bad law, but that it never was the law."

This Court in *People* v. *Winterheld*, 366 Mich 428, on rehearing reversed the earlier decision in the same case recorded in 359 Mich 467 and applied retroactively the effect of *Mapp* v. *Ohio*, 367 US 643 (81 S Ct 1684, 6 L ed 2d 1081, 84 ALR2d 933), to the pre-*Mapp* facts in the *Winterheld Case*.

On October 14, 1963, the United States supreme court vacated the judgments in 10 cases and remanded each of them to the supreme court of Florida for further consideration in light of *Gideon* v. *Wainwright*, 372 US 335 (83 S Ct 792, 9 L ed 2d 799). The

---

[4] See *Betts* v. *Brady*, 316 US 455 (62 S Ct 1252, 86 L ed 1595), decided June 1, 1942.

order reported in *Pickelsimer* v. *Wainwright,* 375 US
2 (84 S Ct 80, 11 L ed 2d 41) read as follows:

*"Per Curiam.* The motions for leave to proceed
*in forma pauperis* and the petitions for writs of
certiorari are granted. The judgments are vacated
and the cases are remanded to the supreme court of
Florida for further consideration in light of *Gideon*
v. *Wainwright,* 372 US 335.

*"Mr. Justice Harlan,* dissenting.

"I am unable to agree with the court's *summary*
disposition of these 10 Florida cases, and believe
that the Federal question which they present in com-
mon is deserving of full-dress consideration. That
question is whether the denial of an indigent defend-
ant's right to court-appointed counsel in a State
criminal trial as established last term in *Gideon* v.
*Wainwright,* 372 US 335, overruling *Betts* v. *Brady,*
316 US 455, invalidates his pre-*Gideon* conviction.

"When this court is constrained to change well-
established constitutional rules governing State
criminal proceedings, as has been done here and in
other recent cases, see, *e.g., Mapp* v. *Ohio,* 367 US
643; *Ker* v. *California,* 374 US 23 (83 S Ct 1623, 10
L ed 2d 726); *Douglas* v. *California,* 372 US 353 (83
S Ct 814, 9 L ed 2d 811), it seems to me that the
question whether the States are constitutionally
required to apply the new rule retrospectively,
which may well require the reopening of cases long
since finally adjudicated in accordance with then
applicable decisions of this court, is one that should
be decided only after informed and deliberate con-
sideration. Surely no general answer is to be found
in 'the fiction that the law now announced has always
been the law.' *Griffin* v. *Illinois,* 351 US 12, 26 (76
S Ct 585, 100 L ed 891, 55 ALR2d 1055) (Frank-
furter, J., concurring). Nor do I believe that the
circumstance that *Gideon* was decided in the context
of a State collateral proceeding rather than upon di-
rect review, as were the new constitutional doctrines
enunciated in *Mapp* and *Ker,* forecloses considera-

tion of the retroactivity issue in this instance.[1] (Emphasis supplied.)

"[1] The court's opinion in *Gideon* contains no discussion of this issue. Similarly, in cases decided last term in which we summarily vacated the judgment and remanded for further consideration in light of *Gideon*, *e. g.*, *Bryant* v. *Wainwright*, 374 US 492, (83 S Ct 1884, 10 L ed 2d 1047), the question of retroactivity was not treated in the dispositions."

This Court need no longer speculate as to whether *Gideon* will be retroactively applied to pre-*Gideon* cases. Justice Harlan's dissenting opinion clearly indicates this is the intent of the United States supreme court.

The import of *Gideon* is that *any* felony prosecution in which an accused is not represented by counsel, and does not expressly waive benefit of counsel, does not fulfill the requirements of a "fair trial" and thus is a denial of due process.

We, therefore, conclude *Gideon* is applicable to the instant case.

The prisoner is discharged and remanded to custody of the sheriff of Macomb county for further proceedings.

SOURIS, J., concurred with KAVANAGH, J.

CARR, C. J., and DETHMERS, KELLY, BLACK, and SMITH, JJ., concurred in result.

O'HARA J. (*concurring*). I concur in the result reached by Mr. Justice KAVANAGH. The defendant at the time of arraignment was denied the fundamental protection afforded him by article 2, § 19, of the Michigan Constitution of 1908. To be advised of the right to be represented by counsel is implicit in the right itself. For this reason I, too, would order defendant's release and remand.

However, I am not prepared to say at this point that *Gideon* v. *Wainwright*, 372 US 335 (83 S Ct 792,

9 L ed 2d 799), nor *Pickelsimer* v. *Wainwright,* 375 US 2 (84 S Ct 80, 11 L ed 2d 41), have the retroactive application contended for them by my confrere. I regard the interpretation given by the Pennsylvania supreme court to *Mapp* v. *Ohio,* 367 US 643 (81 S Ct 1684, 6 L ed 2d 1081, 84 ALR2d 933), as being equally applicable to *Gideon* and *Pickelsimer:*

"In our opinion, *Mapp* was never intended to apply in retrospection so as to command the reversal of judgments of sentence and convictions which *now* offend the *Mapp* rule but which became final *prior* to *Mapp.*" *Commonwealth, ex rel. Wilson,* v. *Rundle,* 412 Pa 109, 122 (194 A2d 143, 149).

When the supreme court of the United States unequivocally states that their recent decisions in this field of constitutional law should be applied retroactively, I will just as unequivocally accept their ruling.