PEOPLE *v.* RUFUS WILLIAMS

OPINION OF THE COURT

1. CRIMINAL LAW—PLEA OF GUILTY—ESTABLISHING CRIME—DE-FENDANT'S PARTICIPATION IN CRIME—STATUTES—COURT RULES.

In accepting a plea of guilty the requirement of establishing the crime and participation therein of the person pleading guilty was met where the court asked "What, roughly, are the facts?" and the defendant did not answer but the assistant prosecuting attorney in his presence did summarize what defendant did, covering the elements of the crime of which defendant was charged (MCLA § 785.35; Court Rule No 35A [1945]).

2. HOMICIDE—PLEA OF GUILTY—DEFENDANT'S INNOCENCE—STATUTES—COURT RULES.

In accepting a plea of guilty to second-degree murder when defendant was charged with first-degree murder the record, beginning with the guilty plea taking proceedings, is such as to justify the court in believing that the defendant was not innocent where defendant did not claim to be innocent but

rather sought to exculpate himself on the grounds of drunkenness, he was 49 years old, and had a 20 year record of criminal convictions (MCLA § 785.35; Court Rule No 35A [1945]).

3. CRIMINAL LAW—PRELIMINARY EXAMINATION—PLEA OF GUILTY—ASSISTANCE OF COUNSEL—PROSPECTIVE APPLICATION.

The Michigan Supreme Court will not attempt to anticipate the United States Supreme Court and, therefore, finds that a June 22, 1970, decision of the United States Supreme Court, concluding that under Alabama procedure the preliminary examination constituted a "critical stage" of the prosecution at which indigent defendants were entitled to court-appointed counsel, is prospective only; accordingly the failure of defendant to have counsel at the preliminary examination does not preclude using the testimony given at the examination to establish a factual basis for a plea conviction prior to that date where defendant was represented by counsel at the time his plea of guilty was accepted.

4. CRIMINAL LAW—PLEA OF GUILTY—CONSTITUTIONAL LAW—STATUTES—COURT RULES—RECORD OF PROCEEDINGS—APPEAL AND ERROR.

In the acceptance of pleas of guilty in Michigan, in the future it will be required that standards of the United States and Michigan Constitutions be met on the record, all statutory and rule requirements also must be complied with, and the failure of the record of the lower court proceedings to illustrate specifically such compliance shall constitute reversible error.

5. CRIMINAL LAW—PLEA OF GUILTY—VOLUNTARY PLEAS—REPRESENTATION OF COUNSEL—ATTORNEY AND CLIENT—OFFICERS OF COURT—CONSTITUTIONAL LAW.

In all guilty plea cases representation by counsel is absolutely essential and should be insisted on in all but the exceptional case as this is the most important protective device in insuring that pleas of guilty are in fact understandingly and voluntarily made; counsel is in the best position due to his initial contact with the defendant, his duty to advise the defendant and ideally his relationship of trust with him, to weigh the merits of defendant's case and to inform him of his constitutional right to a day in court where his guilt must be proven; it is unrealistic to expect that questions by a judge in open court personally directed to the defendant will alone safeguard the defendant's constitutional right and deter false pleas of guilty; and attorneys, as officers of the court and advocates

for their clients, have a vested interest in maintaining the integrity and fairness of the criminal justice system.

### Separate Opinion

### Black and T. E. Brennan, JJ.

6. Criminal Law—Plea of Guilty—Assistance of Counsel—Voluntary Plea—Motion to Withdraw—Discretion—Statutes—Court Rules—Miscarriage of Justice.

*Trial court did not abuse its discretion in failing to set aside a guilty plea conviction where, at the time of defendant's arraignment in September, 1959, he entered a plea of guilty to second-degree murder with the advice and assistance of counsel, the court ascertained the facts of the crime and was satisfied that the plea was voluntarily and intelligently made as required by court rule and statute and where there was no miscarriage of justice (MCLA § 768.35; Court Rule No 35A [1945]).*

Appeal from Court of Appeals, Division 2, Levin, P. J., and T. M. Burns and Danhof, JJ., affirming Genesee, Elza H. Papp, J. Submitted March 2, 1971. (No. 33 January Term 1971, Docket No. 52,850–1/2.) Decided December 21, 1971.

23 Mich App 459 affirmed.

Rufus Williams was convicted, on his plea of guilty, of second-degree murder. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief Assistant Prosecuting Attorney, for the people.

Rufus Williams, *in propria persona.*

Williams, J. Like all recent cases of guilty plea review, *Williams* involves two problems. First, so-

lution of the instant case on the basis of existing law. Second, resolution of the underlying problem of developing certain and viable guidelines for Bench, Bar and defendants. Such guidelines must define a procedure for plea taking that is just and understandable. At the same time it should reduce the necessity for review or simplify and expedite the process of review. The first problem involves this Court's judgment-making role; the second problem calls upon the exercise of this Court's constitutional responsibility for superintending the administration of justice.

### I—The *Williams* Case

The application of existing law to *Williams* is not too difficult as the principle issue is well defined and controlling precedent available, which does justice in the individual case but probably adds little or nothing to the resolution of the second problem of developing certain and viable guidelines.

The question of substantive law involved is whether the guilty plea of defendant Rufus Williams was lawfully taken. The specific question is whether Michigan law on taking guilty pleas requires that under all circumstances the trial judge personally question the defendant for purposes of ascertaining the facts of the crime and defendant's participation therein.[1]

### I (A)—Facts of the *Williams* Case

Williams was originally charged with first-degree murder. With representation of counsel, he pled guilty to second-degree murder. The plea was ac-

---

[1] GCR 1963, 785.3(2); MCLA § 768.35 (Stat Ann 1954 Rev § 28.1058). See *People* v. *Barrows* (1959), 358 Mich 267, 272; but also *People* v. *Stearns* (1968), 380 Mich 704, 716–718.

cepted and he was sentenced on October 19, 1959, to life in prison.

Approximately seven years later, defendant petitioned the trial court to withdraw his guilty plea on the ground that the trial judge had failed to personally question him to ascertain whether a crime was committed and his participation therein, and on other grounds not relevant here. The trial court denied the petition. The Court of Appeals affirmed in an opinion by Judge CHARLES LEVIN.[2]

The facts of the alleged murder and the interrogation of the defendant by the court appear in the following excerpt from the proceedings on the taking of the guilty plea:

*"The Court:* What, roughly, are the facts?

*"Mr. Kuta:*[3] The person that was killed Your Honor was apparently a girl friend of the defendant. On the particular day in question he came over to the home where she was living. He had this gun. He was in the apartment while the deceased was in the bathroom taking a bath or something and then as she came out of the bathroom into her apartment, there was another person present, that she saw him,—they had trouble before,— they had an argument and so forth and she started to run and he had a gun in his possession and shot at her. She was struck and lived for about four and a half to five hours I believe and then expired.

*"The Court:*

*"Q.* You heard what the Prosecutor said Mr. Williams. Is it your desire to plead guilty to the charge that is included, that is, the charge of murder in the second degree?

*"The Respondent:* Yes sir, it is.

*"Q.* You have talked this over with your attorney have you?

*"A.* Yes, sir.

---

[2] *People* v. *Williams* (1970), 23 Mich App 459.

[3] Assistant Prosecuting Attorney.

"*Q.* Do you plead guilty freely and voluntarily?

"*A.* Yes, sir.

"*Q.* Have any threats or any promises been made in order to get you to plead guilty?

"*A.* No, sir.

"*Q.* You plead guilty because in your own mind you are guilty of the crime of murder in the second degree?

"*A.* Yes."

Rufus Williams was 49 years old, had an extensive history of criminal convictions and incarceration going back over 20 years. In seeking to withdraw the guilty plea he did not claim innocence but rather that he was intoxicated at the time of the killing.

Because approximately 75 to 85 percent of our criminal cases are disposed of by the non-adversary process of the guilty plea[4] and because of the large number of appeals to the Court of Appeals[5] and to

---

[4] In 1970, the Michigan circuit courts and Detroit Recorder's Court disposed of a total of 44,718 criminal cases. Of this total, 37,583 cases or 84%, were disposed of without trial. Though there are no statistics as to the number of guilty pleas, presumably the great majority of those criminal cases disposed of without trial involve guilty pleas. 1970 Annual Report, Supreme Court of Michigan, p 71.

"2 During the calendar year of 1968, 14,466 criminal cases were processed through the circuit courts of this State. Of this number, 12,671 (87.6%) were disposed of without trial, presumably the most by guilty pleas. (1968 Judicial Statistics for the State of Michigan, Office of the Court Administrator.)" *People* v. *Taylor* (1970), 383 Mich 338, 373, fn. 2.

"It has been estimated that about 90% and perhaps .95% of all criminal convictions are by pleas of guilty; between 70% and 85% of all felony convictions are estimated to be by guilty plea. D. Newman, Conviction, The Determination of Guilt or Innocence Without Trial 3 and n. 1 (1966)." *Brady* v. *United States* (1970), 397 US 742, 752 fn. 10 (90 S Ct 1463, 25 L Ed 2d 747).

"During 1968 approximately 86% (22,055 out of 25,674) of all convictions obtained in the United States district courts were pursuant to a plea of guilty or its substantial equivalent, a plea of *nolo contendere.* 1968 Director of the Administrative Office of the United States Court Ann. Rep. 261." *McCarthy* v. *United States* (1969), 394 US 459, 463 fn. 7 (89 S Ct 1166, 22 L Ed 2d 418).

[5] "Emphasizing that these figures are not absolutely accurate, and that other accurate figures can never be obtained, it is safe to

this Court[6] alleging errors in the plea-taking procedure, we granted leave to hear this case and the companion cases of *People* v. *Taylor, People* v. *Johnson, People* v. *Jaworski,* and *People* v. *Butler*[7] in order to formulate clear guidelines for lawfully taking a guilty plea that will comply with our construction of the provisions of the court rule on guilty pleas.

## I (B)—Existing Precedent in *Williams*

The leading case in this field is *People* v. *Barrows* (1959), 358 Mich 267. It establishes two criteria.

estimate that appeals involving guilty pleas range from 20–25% of all criminal appeals filed with this Court * * * ." Memorandum from Ronald L. Dzierbicki, Clerk of the Michigan Court of Appeals, to Justice T. G. Kavanagh, Judges Danhof, Farmer, Armstrong, and Crockett, p 2, September 2, 1970.

[6] "That our courts have been sorely vexed by a rash of appeals and post-conviction motions in cases involving pleas of guilty, needs no elaboration here." *People* v. *Taylor* (1970), 383 Mich 338, 354. In the first six months of 1971, this Court heard argument on a total of 37 criminal cases. Of those 37 cases, 6, or 16%, concerned the validity of guilty pleas.

[7] This case is one of the quartette of *People* v. *Rufus Williams* (1971), 386 Mich 277, *People* v. *Jaworski* (1972), 387 Mich 21, *People* v. *Butler* (1972), 387 Mich 1 and *People* v. *Johnson* (1971), 396 Mich 305. Together they consider the principal rules of law relating to the taking of guilty pleas. *Williams* relates more particularly to the requirement that the trial judge ascertain the factual basis of the alleged crime to which the defendant is pleading guilty, especially in light of *People* v. *Barrows* (1959), 358 Mich 267. *Jaworski* deals with whether the plea was *understandingly* made, more specifically with whether the defendant was adequately advised of his rights so that his guilty plea constitutionally waived them. *Jaworski* also considers the general implications of *Boykin* v. *Alabama* (1969), 395 US 238 (89 S Ct 1709, 23 L Ed 2d 274). *Butler* is a pre-*Boykin* case. Its main point is whether substantial compliance requires advising defendant of substantially all of his rights or substantially advising defendant of all his rights. *Johnson's* main consideration is whether the guilty plea was *voluntarily* made, more specifically whether it was made without *duress* or *promise of leniency.* It also deals with the *Boykin* challenge. Procedurally, since *Johnson's* main point is not a guilty plea record matter, *Johnson* also considers how and when such review should be handled.

These cases also conclude that the state of the law on this subject and the general understanding of the law leaves much to be desired. The Supreme Court is setting up a committee to consider the whole matter and recommend clarifying and definitive rules to be strictly followed after adoption.

The first and most important criterion is as follows:

"The direct questioning of a defendant by the trial judge on plea of guilty is required by the rule [35A] for the purpose of establishing the crime and the participation therein of the person pleading guilty." 358 Mich 267, 272.

The second criterion is found in the following quotation:

"Nor does this record convince us of the truth of the plea." 358 Mich 267, 273.

Furthermore, *Barrows* noted that the defendant was only 19 years old and that this was his first appearance in a criminal court.

Applying these criteria to *Williams,* the above quoted excerpt from the *Williams* guilty plea taking begins with the court asking "What, roughly, are the facts?" The defendant himself does not answer but the assistant prosecuting attorney in his presence does summarize what defendant did, covering the elements of the crime of which defendant is charged. Such action meets the requirement of "establishing the crime and participation therein of the person pleading guilty" as required by *Barrows*.[8]

---

[8] *Williams* relies on the assistant prosecuting attorney at the taking of the guilty plea relating to the court in defendant's presence the facts of defendant's participation in the alleged crime. This is to establish the existence of such crime and defendant's participation therein in satisfaction of Rule 35A. Since the colloquy began with the judge inquiring "What, roughly, are the facts," the judge was in effect personally examining the defendant as per *Barrows*. (A similar procedure was followed in *People* v. *Butler* [1972], 387 Mich 1. See Appendix I. In that case the judge buttoned up the matter by asking "What you have told your attorney is the truth.") Our decision in *Williams* since it relies on the inquiry at the taking of the guilty plea rather than the testimony at the preliminary examination is distinguishable from *People* v. *Zaleski* (1965), 375 Mich 71, 81, where Justice SOURIS indicates disapproval of the practice "with regard to the trial judge's quoted assertions

As to the second criterion, being convinced that the defendant was or was not innocent, the facts in *Williams* are that the defendant did not claim to be innocent but rather he sought to exculpate himself on the grounds of drunkenness. Furthermore, the record beginning with the guilty plea taking proceedings is such as to justify the court in believing that the defendant was not innocent.

As contrasted to the youth and first offender status of the defendant in *Barrows*, in *Williams* the defendant had a 20 year record of criminal convictions.

The requirements of *Barrows* and the statute and court rule are satisfied by the action in *Williams*.[9]

---

that he had read the examination testimony and had no question in his mind concerning defendant's guilt."

Logically if complete reliance is allowed on the case made at the preliminary examination, there would be little need for Rule 35A's requirement "for the purpose of establishing the crime and the participation therein of the person pleading guilty" because that is substantially what the examining magistrate seeks to establish, although the examining magistrate need only establish probable cause. However, neither operation is a trial of guilt or innocence.

This Court's decision, therefore, does not rely, as the Court of Appeals does, on the strong testimony at the preliminary examination but on the testimony at the plea taking.

[9] The facts in *Williams* certainly are sufficient to satisfy the requirements of the later case of *People* v. *Stearns* (1968), 380 Mich 704. In that case the majority opinion found that the requirements of Rule 35A were satisfied by the following:

1. The following question by the trial judge and defendant's answer at plea taking:
   "You are pleading guilty because you are guilty and for no other reason." — "Yes, Sir." (380 Mich 704, 708.)

2. "The record shows that the trial court, after accepting the plea of guilty, referred defendant to the probation officer with instructions to 'give him the whole story, and we will try and figure out the fair thing to do.'
   "The record further discloses that the defendant cooperated at the presentence investigation, explaining how he gained access to the garage by breaking a window." (380 Mich 704, 717.)

3. "I agree with my Brother that 'the fundamental inquiry is whether there has been a miscarriage of justice.'" (380 Mich 704, 718.)

I (C)—*Williams* Subissue

Defendant contends that the failure to have counsel at the preliminary examination precludes using the testimony given at the examination to establish a factual basis for his plea conviction. Defendant cites *Coleman* v. *Alabama* (1970), 339 US 1 (90 S Ct 1999, 26 L Ed 2d 387) for the proposition that he was entitled to court appointed counsel at the preliminary examination. The United States Supreme Court in *Coleman* concluded that under Alabama procedure the preliminary examination constituted a "critical stage" of the prosecution at which indigent defendants were entitled to court appointed counsel. *Coleman* was decided on June 22, 1970. The preliminary examination of the defendant in the instant case was held on April 29, 1959. We will not attempt to anticipate the United States Supreme Court,[10] and therefore find that *Coleman* is prospective only. This same conclusion was reached in *Kochel* v. *State of Maryland* (1970), 10 Md App 11 (267 A2d 755), and in *Commonwealth* v. *Brown* (1970), 217 Pa Super 190 (269 A2d 383).

Evidence of the United States Supreme Court's own feeling on this issue is present in *Wetzel* v. *North Carolina* (1970), 399 US 934 (90 S Ct 2250, 26 L Ed 2d 805). In *Wetzel,* the majority of the Court declined to grant certiorari, with three justices dissenting on the ground that they felt *Coleman* should be retroactive in all cases.

Since defendant was represented by counsel at the time his plea of guilty was accepted, and since we hold that *Coleman* applies only prospectively, defendant's contentions on this issue must fail.

The trial court and the Court of Appeals are affirmed.

---

[10] See *People* v. *Charlie Lee Woods* (1968), 382 Mich 128.

## II—The Administration of Justice in Taking Guilty Pleas

The results of failure to observe proper procedures in the acceptance of guilty pleas are costly in dollars, public safety or public understanding of the judicial process, or most likely in all three. However, while less immediately injurious to public policy and respect for the law, erosion of a certain standard by hard case exceptions, however individually justifiable, creates greater injustice and brings the law into greater disrepute in the long run, because it both slows down the wheels of justice through a proliferation of cases for complicated review and corrupts the very concept of the law as a standard by which men can live.

The problem is first, to write a just *and* practicable rule; and second, to secure the cooperation of trial judges in following it and third, to enforce the rule strictly.

### II (A)—Brief History of the Underlying Problem

From the beginning there have been efforts to bring some certainty into the law and efforts to work out individual justice where there has been failure to follow the prescribed standards.

Legislation beginning in 1875 attempted to create some specific standards in taking pleas. The current relevant statute is MCLA § 768.35 (Stat Ann 1954 Rev § 28.1058):

"Whenever any person shall plead guilty to an information filed against him in any court, it shall be the duty of the judge of such court, before pronouncing judgment or sentence upon such plea, to become satisfied after such investigation as he may deem necessary for that purpose respecting the

nature of the case, and the circumstances of such plea, *that said plea was made freely, with full knowledge of the nature of the accusation, and without undue influence.* And *whenever said judge shall have reason to doubt the truth of such plea of guilty, it shall be his duty to vacate the same,* direct a plea of not guilty to be entered and order a trial of the issue thus formed." (Emphasis added.)[11]

This Court entered the field with Court Rule 35A in 1947:

"Sec. 2. Imposing Sentence. If the accused pleads guilty, after such plea and before sentence the court shall inform the accused of the nature of the accusation and the consequence of his plea; and regardless of whether he is represented by counsel, the court shall examine the accused, not necessarily under oath, and as a condition of accepting the plea of guilty and imposing sentence shall ascertain that the plea was freely, understandingly, and voluntarily made, without undue influence, compulsion, or duress, and without promise of leniency. Unless the court determines that the plea of guilty was so made, it shall not be accepted.

\*    \*    \*

"This rule is mandatory but failure to comply therewith shall not be considered jurisdictional."

The specificity of the Court Rule was, as we have seen, supported by *Barrows* in 1959.

Eight years after *Barrows*, on May 8, 1968, our Court handed down the four cases of *Hobdy, Dunn,*

[11] The language of this statute is reflected by the requirements which we set out later in this opinion: " \* \* \* with full knowledge of the accusation \* \* \* "—see footnote 7 of the Appendix; " \* \* \* that said plea was made freely \* \* \* and without undue influence \* \* \* "—see footnote 6 of the Appendix; "And whenever said judge shall have reason to doubt the truth of such plea of guilty, it shall be his duty to vacate the same \* \* \* "—see footnote 9 of the Appendix.

*Winegar* and *Stearns*[12] in which this Court announced that the standard required of trial judges in following the law on taking of guilty pleas is the standard of substantial compliance. The import of that standard is demonstrated in the following two quotations, the first from *Dunn* and the second from *Winegar:*

"In conclusion, we cite again the court rule and statute cited in *People* v. *Winegar* (1968), 380 Mich 719: GCR 1963, 529.1 and CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096). The import of both the rule and the statute is that on review courts should be concerned with substance, not with form, that the fundamental inquiry is whether there has been a miscarriage of justice." *People* v. *Dunn* (1968), 380 Mich 693, 701.

"Third, a plea of guilty should not be set aside after sentence merely because the verbatim record does not affirmatively show compliance *in illis verbis* with GCR 1963, 785.3(2)." *People* v. *Winegar* (1968), 380 Mich 719, 731.

In *Hobdy* we upheld a guilty plea where the record failed to indicate whether the defendant expressly waived counsel but did show he was informed of his right to counsel. In *Dunn* we upheld a guilty plea where the defendant was not informed of the maximum possible sentence for the charge to which he pled guilty reasoning that length of sentence was not one of the "consequences of his plea".

In *Winegar,* we did not reject a guilty plea where the judge examined the defendant off the record in his judicial chambers to ascertain the factual basis for the plea and to inform the defendant of the nature of the accusation and the consequences of

---

[12] *People* v. *Hobdy* (1968), 380 Mich 686; *People* v. *Dunn* (1968), 380 Mich 693; *People* v. *Stearns* (1968), 380 Mich 704; *People* v. *Winegar* (1968), 380 Mich 719.

the plea[13] and spread these facts on the record. We have discussed *Stearns* above, I (B).

The next and most recent decision in this area is *People* v. *Taylor* (1970), 383 Mich 338 outside of *People* v. *Ferguson* below.

Defendant alleged in seeking to invalidate his plea of guilty that (1) he was not advised of his right to counsel but that he was interrogated incessantly; (2) "that his statements were used as a 'stick' to elicit a false plea of guilty;" and (3) he was innocent (p 351). The majority opinion held that, while defendant's motion for a new trial attacked both the voluntariness and the truth of his plea, the defendant produced nothing before the trial judge which properly challenged his decision (pp 363, 364). The dissenting opinion found no error in the Court of Appeals opinion based on the failure of the trial court to inform the defendant of the maximum sentence possible as required by GCR 1963, 785.3(2) as part of the determination that the plea was understandingly and voluntarily made (p 375). It also cited with approval the Court of Appeals' specific principles in accepting a plea of guilty. While the majority opinion is based on a lack of evidence, there is nothing in this opinion to indicate a departure from the substantial compliance rule developed in the previously considered cases.

---

[13] *People* v. *Winegar* (1968), 380 Mich 719, 727:

"*The Court:* Let the record show that the court has conferred with Mr. Winegar relative to the circumstances of the crime, is convinced that he committed the crime, that his plea was freely, understandingly and voluntarily made without undue influence, compulsion, or duress, and without promise of leniency. Therefore, his plea is accepted and he is remanded to the custody of the county sheriff to await sentence. That is all."

A serious question exists as to the validity of *Winegar* today in light of the later United States Supreme Court decisions of *Boykin* v. *Alabama* (1969), 395 US 238 (89 S Ct 1709, 23 L Ed 2d 274) and *McCarthy* v. *United States* (1969), 394 US 459 (89 S Ct 1186, 22 L Ed 2d 418).

The *Taylor* case indicates that within the Court itself there was support for both a rule of substantial compliance and strict compliance with procedural requirements. To some extent this was also true in *Hobdy, Dunn, Winegar* and *Stearns*. The culmination of this difference of opinion occurred in *People* v. *Ferguson* (1970), 383 Mich 645 where the disqualification of one justice resulted in a three to three non-decision. The question involved was whether failure to advise a defendant of the maximum penalty for the offense charged is a violation of the court rule requiring the court to inform the accused of the nature of the accusation and the consequence of his plea. The equally divided Court affirmed the Court of Appeals' reversal of the trial judge.

It should be noted that differences on applying the law in reviewing the conduct of the trial judge in his application of the procedures prescribed in GCR 1963, 785.3(2) do not necessarily indicate a difference in view as to what the correct procedure should be but only a difference as to the consequence of failing to specifically carry out that procedure.[14] Consequently, it may be more feasible to set up guidelines by adopting a new rule than through the decisional process.

---

[14] For example, the opinion of the Court in *People* v. *Winegar* (1968), 380 Mich 719, 731:

"Second, reversal of a lower court is not the only method an appellate court has of enforcing the court rule. The superintending authority of the Supreme Court is sufficient to assure compliance by the trial courts with a mandatory but nonjurisdictional court rule. There is no need to release or re-try criminals in order to enforce the court rule."

II (B)—Utility of Rule to Solve Problems as
to Workable Guidelines for Guilty
Pleas & Effective Adminis-
tration of Justice

The problem of the proper taking of guilty pleas
was well summed up in *People* v. *Taylor*, by then
Chief Justice T. E. BRENNAN where he says "Despite
several years of debate, countless regional and
statewide conferences, and dozens of individual
cases, confusion remains, and the demand for defini-
tive guidelines has not subsided."[15] That was 1970.
In 1971 Chief Judge T. JOHN LESINSKI of the Michi-
gan Court of Appeals in *People* v. *Jaworski* indi-
cates that the confusion still exists[16] and, of course,
to help solve this confusion is why the Supreme
Court accepted the *Williams* case. To again quote
former Chief Justice T. E. BRENNAN, "In this maze,
we must choose our own course, if not by the pre-
science of court rule, then at least by clear hind-
sight demonstrably incorporated in an understanda-
ble body of case law."[17]

Former Chief Justice T. E. BRENNAN then went
on to say:

"This appeal of Taylor presents an opportunity
to get on with it."

From the flow of incoming cases, it would seem
that as brave as this Court's determination "to get
on with it" on a case by case basis, and as normal
judicial process as that would be, it does not appear
to be comprehensive and compelling enough to meet
the problem of confusion and uncertainty confront-

---

[15] (1970), 383 Mich 338, 354.
[16] "Some of the opinions in these cases would appear to be attempts
to lay to rest once and for all the issue of what constitutes a valid plea
of guilty. I believe that all of the confusion and needless writing
in this area could be avoided if trial courts would spend just a few
minutes more in the taking of a plea of guilty." (1970), 25 Mich
App 540, 560.
[17] (1970), 383 Mich 338, 358.

ing the courts and tantalizing defendants and their attorneys. The alternative then is the development of an effective rule.[18]

Meeting the problem by rule makes sense because it is more logical to attack a complicated problem not susceptible of resolution in a single case by a rule which can comprehend issues that would require many cases and perhaps a long time to develop. But there is a further and persuasive reason and that is that much of the confusion has revolved not around a substantive rule of law but the consequences of a failure to follow a procedural rule, such as whether the trial court must ascertain the truth of a plea by personal interrogation of the accused or through some other presumably equally reliable method.

## II (C)—Development of New Rule & Procedure

In order to develop the most individually and socially just, the most simple and workable, the most understandable and acceptable rule, this Court is inviting members of the trial and appellate bench along with members of the Bar to review GCR 1963, 785.3 to determine whether it best expresses the practical and legal principles for accepting a

---

[18] Thomas G. Plunkett, Prosecuting Attorney of Oakland County, on pages 9 and 10 of his combined brief for *Butler* and *Jaworski* concedes as much:

"In Michigan, as in the federal jurisdictions, the vast majority of criminal prosecutions are concluded *via* guilty pleas. And, as Chief Justice Warren indicates, the present system encourages frivolous attacks on guilty pleas to the great waste of judicial resources. *McCarthy* v. *United States,* 394 US 459, 472 (1969).

"The People do not dispute that there is much wisdom in a rule which requires careful, even painstaking *personal* interrogation by a a judge prior to acceptance of a guilty plea since such a rule can only result in fewer frivolous appeals of guilty pleas. This was accomplished in federal jurisdictions by amendment of Fed. Rule Crim. Proc. 11:" (Quotation omitted.)

"Perhaps such an amendment to the Michigan General Court Rules would have a salutary effect on Michigan criminal jurisprudence."

plea of guilty, and, if not to recommend a better one. This group will also be asked to consider whether this Court should lay down new procedures for the review of guilty pleas.

This development is an exercise of this Court's constitutional responsibility for superintending the administration of justice in this state. Its aim is to facilitate the taking of guilty pleas, which are favored by our criminal jurisprudence for pragmatic, psychological and philosophical reasons.[19] It is also to facilitate review or reducing the necessity to review the taking of guilty pleas. This latter will permit the courts to do a better job of such review and also have more time to devote to the general task of administering justice.

The committee development of such a rule and procedures should accomplish four objectives. First it would apply to the formulation of such a rule

---

[19] In *Brady* v. *United States* (1970), 397 US 742 (90 S Ct 1463, 25 L Ed 2d 747), the United States Supreme Court spoke favorably of guilty pleas and gave judicial blessing to the system of plea bargaining which produces so many pleas of guilty. Mr. Justice White, writing for the majority, summarized the arguments in support of guilty pleas as follows:

"For a defendant who sees slight possibility of acquittal, the advantages of pleading guilty and limiting the probable penalty are obvious —his exposure is reduced, the correctional processes can begin immediately, and the practical burdens of a trial are eliminated. For the State there are also advantages—the more promptly imposed punishment after an admission of guilt may more effectively attain the objectives of punishment; and with the avoidance of trial, scarce judicial and prosecutorial resources are conserved for those cases in which there is a substantial issue of the defendant's guilt or in which there is substantial doubt that the State can sustain its burden of proof. It is this mutuality of advantage that perhaps explains the fact at present over three-fourths of the criminal convictions in this country rest on pleas of guilty, a great many of them no doubt motivated at least in part by the hope or assurance of a lesser penalty that might be imposed if there were a guilty verdict after a trial to judge or jury." (Footnotes omitted.)  397 US 742, 752.

See also American Bar Assoc. Project on Standards for Criminal Justice, Pleas of Guilty, § 1.8 and commentary, pp 37–52; *The Challenge of Crime in a Free Society* (A Report by the President's Commission on Law Enforcement and Administration of Justice), "The Negotiated Plea of Guilty," pp 134–136.

and procedures the best talent and most comprehensive and varied experience. Second it would clarify the law. Third it would promote the widest possible understanding among Bench, Bar, and future defendants of the rule and procedures. Fourth, it should produce a result capable of rendering justice and simplifying or reducing appeals, yet workable and acceptable enough to command the understanding and cooperation of all who must work with it.

Time is, of course, of the essence. Existing law with its confusion and uncertainties must be followed until the new rule has been developed, approved and promulgated for general understanding before becoming effective. It is the Court's intention that the new rule shall be effective for all guilty pleas taken on and after April 1, 1972.[20] As of that time the new rule shall be followed specifically and strictly, and where a judge shall fail to follow the prescribed procedures, it shall be treated as reversible error.

The group in developing a new rule for recommendation shall consider all matters it shall deem helpful including existing Michigan statutes and court rules, the Federal court rules and the American Bar Association Standards. In addition, attached as an appendix is a set of guidelines for consideration. As to procedures for review the group will want to compare our procedures with that of other jurisdictions plus excellent suggestions already made to this Court.

T. G. KAVANAGH and SWAINSON, JJ., concurred with WILLIAMS, J.

T. M. KAVANAGH, C. J., and ADAMS, J., concurred in the result.

---

[20] See *Holytz* v. *Milwaukee* (1962), 17 Wis 2d 26 (115 NW2d 618).

*APPENDIX*

## SUGGESTED GUILTY PLEA TAKING GUIDELINES

To accept a plea of guilty properly, the trial court must among other things satisfy itself that the necessary constitutional requirements (1–6) and the necessary statutory and court rule requirements (7–10) are complied with:

(1) The trial court shall[1] see that compliance with

---

[1] The word "shall" is used to make clear that these are *mandatory* guidelines which are to be followed by the trial court. In our *Williams* opinion we state we shall adopt rules, failure to adhere to which will constitute reversible error.

The language in the guidelines endeavors to make two points absolutely clear: First, that the required action is mandatory, and second, that it must have been taken on the record.

Past opinions have not made clear how much discretion they left to the trial judge, because they have failed to make adequate reference to the record. The defendant in *People v. Ferguson* (1882), 48 Mich 41, contended that in accepting his plea of guilty the trial judge had not conducted a proper examination. In affirming the conviction, this Court held:

"Now the validity of a sentence does not require that it should appear of record in what particular manner the judge may have proceeded to satisfy himself that the prisoner acted knowingly and freely in pleading guilty. The record may imply that the sense of the statute was complied with, or it may imply the contrary, and we have had one case where the record was so equivocal that a *certiorari* was issued to secure a return from the judge relative to his action in reference to the statute. *Edwards* v. *People* [1878] 39 Mich 760; *Clark* v. *People* [1880] 44 Mich 308; *Henning* v. *People* [1879] 40 Mich 733." 48 Mich 41, 42.

In *People v. Bumpus* (1959), 355 Mich 374, the defendant alleged that his plea of guilty to the crime of robbery unarmed had been accepted though he never realized the nature of the charge. In affirming the conviction, this Court stated:

"The form and nature of this examination by the judge has not been prescribed but is left to the discretion of the judge, to be exercised by him in the manner best suited to the parties and the offense."

This opinion concluded:

"Moreover, 'Where *it affirmatively appears that the judge made inquiry* to satisfy himself that the plea of guilty entered expressed the real desire of the defendant, there can be no assumption that the defendant acted in ignorance or under compulsion.' 8 MLP, Criminal Law, § 125, p 155.

"We find no error. Affirmed." (Emphasis supplied.) 355 Mich 374, 382.

The statement " * * * it affirmatively appears * * * " or lan-

the necessary constitutional, statutory and court rule requirements herein specified shall appear

guage of a similar nature has been used in a number of cases. These opinions indicate appropriate action was taken without specifying it.

In *People* v. *Coveyou* (1882), 48 Mich 353, the defendant contended that the trial judge had not made an adequate examination while accepting the defendant's plea of guilty. In affirming the conviction, this Court stated:

"PER CURIAM. The only error relied upon in this case is that the circuit judge did not, after receiving the respondent's plea of guilty, make the necessary examination to enable him to determine that the plea was freely and intelligently made. The error is not satisfactorily made out. The respondent first pleaded not guilty, and the record shows that he had counsel, and after three weeks' delay came into court and by leave of the court withdrew the first plea and pleaded guilty. *It affirmatively appears that the judge made inquiry* to satisfy himself that this action expressed the respondent's real desire, and there can be no assumption under the facts stated that he had acted in ignorance or under compulsion.

"Judgment affirmed." (Emphasis supplied.) 48 Mich 353.

The trial court in *People* v. *Lepper* (1883), 51 Mich 196, made no inquiry of the defendant as to his alleged offense. The trial judge had, however, discussed the defendant's criminal actions with the under-sheriff and with the defendant's wife. In affirming the conviction obtained by guilty plea, this Court stated:

"In this case it would have been more satisfactory to us had the record furnished more of the particulars of the investigation made by the circuit judge before pronouncing sentence. Still, there appears to have been no undue haste in the matter, and the facts stated in the return, we think, bring the case clearly within the previous rulings of this Court. *Henning* v. *People* [1879] 40 Mich 733; *Bayliss* v. *People* [1881] 46 Mich 221; *Clark* v. *People* [1880] 44 Mich 308; *People* v. *Ferguson* [1882] 48 Mich 41." 51 Mich 196, 199.

The defendant in *People* v. *Ellsworth* (1888), 68 Mich 496, argued on appeal that the record did not indicate a proper examination had been conducted by the trial court when the defendant's plea of guilty to the crime of larceny was accepted. Though vacating a portion of the defendant's sentence on other grounds, this Court affirmed the conviction by guilty plea:

"As to the second objection to the sentence, *we think the presumption from the record is that the circuit judge performed his duty under the statute.* The record shows that the respondent was assigned able counsel of his own choice, and had consultation with him before entering his plea of guilty. It also shows that the circuit judge had a private examination of the accused before sentence, and it must be inferred that he was satisfied in that interview that the plea was—

" 'Made freely, with full knowledge of the nature of the accusation, and without undue influence.' " (Emphasis supplied.) 68 Mich 496, 502.

See also *People* v. *Hobdy* (1968), 380 Mich 686, *People* v. *Dunn* (1968), 380 Mich 693, *People* v. *Stearns* (1968), 380 Mich 704, and *People* v. *Winegar* (1968), 380 Mich 719, (1968) discussed in the body of this opinion.

affirmatively on the record of taking the guilty plea;[2] (2) The court shall personally inform the defendant of the right to counsel and that if defendant cannot afford counsel that the state will provide him counsel at public expense; and the court shall ask the defendant if he wants counsel;[3]

---

In the future, this Court will require that standards of the United States and Michigan Constitutions be met on the record in the acceptance of guilty pleas in the State of Michigan. All statutory and court rule requirements also must be complied with. Failure of the record of the lower court proceedings to illustrate specifically such compliance shall constitute reversible error.

[2] *Boykin* v. *Alabama* (1969), 395 US 238; see footnotes 4 and 7 of this appendix for the language in *Boykin* and footnote 8 for similar language from *McCarthy*. See also ABA Standards Relating to Pleas of Guilty, Approved Draft, 1968, p 8:

"1.7 Record of proceedings. A verbatim record of the proceedings at which the defendant enters a plea of guilty or nolo contendere should be made and preserved. The record should include (i) the court's advice to the defendant (as required in section 1.4), (ii) the inquiry into the voluntariness of the plea (as required in section 1.5), and (iii) the inquiry into the accuracy of the plea (as required in section 1.6)."

*McCarthy* v. *United States* (1969), 394 US 459, 471, 472:

"Similarly, it follows that, if the record had been developed properly, and if it demonstrated that petitioner entered his plea freely and intelligently, his subsequent references to neglect and inadvertence could have been summarily dismissed as nothing more than overzealous supplications for leniency.

" * * * Our holding that a defendant whose plea has been accepted in violation of Rule 11 should be afforded the opportunity to plead anew not only will insure that every accused is afforded those procedural safeguards, but also will help reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged, and are more difficult to dispose of, when the original record is inadequate. It is, therefore, not too much to require that, before sentencing defendants to years of imprisonment, district judges take the few minutes necessary to inform them of their rights to determine whether they understand the action they are taking."

[3] United States Constitution, Amendment 6:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense." Michigan Constitution, Article 1, § 20:

"Sec. 20. In every criminal prosecution, the accused shall have the right to a speedy and public trial by an impartial jury, which may consist of less than 12 jurors in all courts not of record; to be

(3) The court shall personally inform defendant of the right to a jury trial and that at trial he will

informed of the nature of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; to have the assistance of counsel for his defense; to have an appeal as a matter of right; and in courts of record, when the trial court so orders, to have such reasonable assistance as may be necessary to perfect and prosecute an appeal."

In *Gideon* v. *Wainwright* (1963), 372 US 335 (83 S Ct 792, 9 L Ed 2d 799), the United States Supreme Court held that due process requires the states to inform defendants charged with felonies of their right to counsel, and if indigent, their right to court-appointed counsel paid for at public expense. The Court stated:

"The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him." *Supra*, 344.

*Carnley* v. *Cochran* (1962), 369 US 506, 511 (82 S Ct 884, 8 L Ed 2d 70):

"Other circumstances attending this case only serve to accentuate the unfairness of trial without counsel.

"We must therefore consider whether the petitioner did intelligently and understandingly waive the assistance of counsel." *Supra*, 513.

"Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." *Supra*, 516.

*Johnson* v. *Zerbst* (1938), 304 US 458, 462, 463 (58 S Ct 1019, 82 L Ed 1461):

"It [the Sixth Amendment] embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly and necessary to the lawyer, to the untrained layman may appear intricate, complex and mysterious.

"This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." *Supra*, 465.

"Since an intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney, this Court has scrutinized with special care pleas of guilty entered by defendants without the assistance of counsel and without a valid waiver of the right to counsel." (Citations omitted.) *Brady* v. *United States* (1970), 397 US 742, 748 fn. 6.

be presumed innocent until proven guilty beyond a reasonable doubt;[4]

See *In Re Palmer* (1963), 371 Mich 656, 662, 663 and *People* v. *Parshay* (1967), 379 Mich 7, in which a divided Court said:

"However, even before *Gideon*, this Court required, by rule adopted in 1947, that in every felony prosecution the accused be advised of his right to have the assistance of counsel and, if financially unable to employ counsel, that counsel be appointed for him upon his request. See Court Rules (1945), No 35a and, currently, GCR 1963, 785.3. Whatever the nature of the right, constitutional or rule, defendant Parshay, accused of a felony, was entitled to be represented at his arraignment by an attorney, either one employed by him or, if he was unable financially to employ an attorney of his own choosing, by an attorney appointed by the court. This right the trial judge clearly recognized and advised defendant he possessed." 379 Mich 7, 11, 12.

See also ABA Standards Relating to Pleas of Guilty, Approved Draft, 1968, pp 6, 7:

"1.3 Aid of counsel; time for deliberation. (a) A defendant should not be called upon to plead until he has had an opportunity to retain counsel or, if he is eligible for appointment of counsel, until counsel has been appointed or waived. A defendant with counsel should not be required to enter a plea if his counsel makes a reasonable request for additional time to represent the defendant's interests."

[4] See United States Constitution, Amendment 6, in footnote 3.
See Michigan Constitution, Article 1, § 20, in footnote 3.

"Because we believe that trial by jury in criminal cases is fundamental to the American scheme of justice, we hold that the Fourteenth Amendment guarantees a right of jury trial in all criminal cases which—were they to be tried in a federal court—would come within the Sixth Amendment's guarantee." *Duncan* v. *Louisiana* (1968), 391 US 145, 149 (88 S Ct 1444, 20 L Ed 2d 491).

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the guarantee against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Second, is the right to trial by jury. Third, is the right to confront one's accusers. We cannot presume a waiver of these three important federal rights from a silent record." (Citations omitted.) *Boykin* v. *Alabama* (1969), 395 US 238, 243.

See also ABA Standards Relating to Pleas of Guilty, Approved Draft, 1968, p. 7:

"1.4 Defendant to be advised by court.

"The court should not accept a plea of guilty or nolo contendere from a defendant without first addressing the defendant personally and * * * (b) informing him that by his plea of guilty or nolo contendere he waives his right to trial by jury;"

*People* v. *Dunn* (1968), 380 Mich 693, mentions the necessity of advising a defendant of his constitutional rights at the time a guilty plea is accepted:

"A right cannot be waived where there is no showing the accused was aware of the right.

"The right when explained thereafter must be understandingly, competently, and intelligently waived." 380 Mich 693, 698.

(4) The court shall personally inform defendant of the right to confront his accusers and to question all witnesses and have compulsory process for obtaining witnesses in his favor;[5]

(5) The court shall personally inform defendant of the right not to have to testify as a witness unless he wants to do so, and also that the jury may draw no inferences if defendant chooses not to testify;[6]

---

[5] See United States Constitution, Amendment 6, in footnote 3. See Michigan Constitution, Article 1, § 20, in footnote 3.

"We hold today that the Sixth Amendment's right of an accused to confront the witnesses against him is likewise a fundamental right and is made obligatory on the States by the Fourteenth Amendment.

"It cannot seriously be doubted at this late date that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him. And probably no one, certainly no one experienced in the trial of lawsuits, would deny the value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case." *Pointer* v. *Texas* (1965), 380 US 400, 403, 404 (85 S Ct 1065, 13 L Ed 2d 923. *Boykin* v. *Alabama* (1969), 395 US 238, 243; see footnote 4.

See *People* v. *Dunn* (1968), 380 Mich 693, 698 in footnote 4.

[6] United States Constitution, Amendment 5:

"No person * * * shall be compelled in any criminal case to be a witness against himself * * * ."

Michigan Constitution, Article 1, § 17:

"No person shall be compelled in any criminal case to be a witness against himself * * * ."

"We hold today that the Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgment by the States. Decisions of the Court since *Twining* and *Adamson* have departed from the contrary view expressed in those cases." *Malloy* v. *Hogan* (1964), 378 US 1, 6 (84 S Ct 1489, 12 L Ed 2d 653).

"The Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement—the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty, as held in *Twining,* for such silence." *Supra,* 8.

The reference "to suffer no penalty" in *Malloy* v. *Hogan* suggests the trial court should also advise defendant that the prosecutor may not comment upon his failure to testify, see *Griffin* v. *California* (1965), 380 US 609 (85 S Ct 1229, 14 L Ed 2d 106). The United States Supreme Court has not yet considered this question.

"(2) Imposing Sentence. If the accused pleads guilty, after such plea and before sentence the court shall inform the accused of the nature of the accusation and the consequence of his plea; and regardless of whether he is represented by counsel, the court shall examine the accused, not necessarily under oath, and as a condition of accepting the plea of guilty and imposing sentence shall ascertain that the plea was freely, understandingly, and voluntarily made, without undue

(6) The court by personally questioning the defendant shall satisfy itself that the plea is voluntarily and understandingly made; for example, by inquiring as to whether any force, threats, or promises were employed, and by stating clearly that the judge will make up his own mind as to the sentence after studying the presentence report;[7]

(7) The court shall personally inform defendant of the elements of the offense to which he is pleading guilty;[8]

---

influence, compulsion, or duress, and without promise of leniency. Unless the court determines that the plea of guilty was so made, it shall not be accepted." GCR 1963, 785.3(2).
See *People* v. *Dunn* (1968), 380 Mich 693, 698 in footnote 4.

[7] "It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." *Boykin* v. *Alabama* (1969), 395 US 238, 242.

"The three dissenting justices in the Alabama Supreme Court stated the law accurately when they concluded that there was reversible error 'because the record does not disclose that the defendant voluntarily and understandingly entered his pleas of guilty.'" (Citations omitted.) *Supra*, 244.
A divided Court in *People* v. *Taylor* (1970), 383 Mich 338, 360 stated:

"The trial judge's duty as defined by statute and court rule is to inquire into and examine the voluntariness of the plea."

" * * * it was the court's duty to investigate the basis for defense counsel's statement and, particularly, whether or not the defendant was pleading guilty in reliance upon any agreement believed by him to be expressed thereby." *In Re Valle* (1961), 364 Mich 471, 478.
See also ABA Standards Relating to Pleas of Guilty, Approved Draft, 1968, pp 7–8:

"1.5 Determining voluntariness of plea.

"The court should not accept a plea of guilty or nolo contendere without first determining that the plea is voluntary. By inquiry of the prosecuting attorney and defense counsel, the court should determine whether the tendered plea is the result of prior plea discussions and a plea agreement, and, if it is, what agreement has been reached. If the prosecuting attorney has agreed to seek charge or sentence concessions which must be approved by the court, the court must advise the defendant personally that the recommendations of the prosecuting attorney are not binding on the court. The court should then address the defendant personally and determine whether any other promises or any force or threats were used to obtain the plea."

[8] See also *McCarthy* v. *United States*:

"[Federal] Rule 11 expressly directs the district judge to inquire whether a defendant who pleads guilty understands the nature of the charge against him and whether he is aware of the consequences of his plea." *McCarthy* v. *United States* (1969), 394 US 459, 464.

(8) The court shall personally inform defendant of the maximum sentence prescribed by law and, if there is a mandatory minimum sentence, the minimum sentence prescribed by law; that pleading guilty is admitting violation of probation or parole for which the defendant may be punished;[9]

(9) The court shall through personal interrogation of the defendant satisfy itself that a crime was committed and that the defendant participated therein (truth of plea);[10]

---

"Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *Supra,* 466.

"Moreover, since the elements of the offense were not explained to petitioner, and since the specific acts of tax evasion do not appear of record, it is also possible that if petitioner had been adequately informed he would have concluded that he was actually guilty of one of two closely related lesser included offenses, which are mere misdemeanors." *Supra,* 471.

See also ABA Standards Relating to Pleas of Guilty, Approved Draft, 1968, p 7:

"1.4 Defendant to be advised by court.

"The court should not accept a plea of guilty or nolo contendere from a defendant without first addressing the defendant personally and

"(a) determining that he understands the nature of the charge;"

[9] We are cognizant of the fact that the United States Supreme Court has yet to require that trial judges inform defendants pleading guilty of these facts. GCR 1963 785.3(2), however, requires that Michigan trial courts inform " * * * the accused of the nature of the accusation and the *consequence of his plea.*" (Emphasis added.) *Contra, People* v. *Dunn* (1968), 380 Mich 693, 700 but see discussion equally divided Court *People* v. *Ferguson* (1970), 383 Mich 645.

See also ABA Standards Relating to Pleas of Guilty, Approved Draft, 1968, p 7:

"1.4 Defendant to be advised by court.

"The court shall not accept a plea of guilty or nolo contendere from a defendant without first addressing the defendant personally and * * *

"(c) informing him:

"(i) of the maximum possible sentence on the charge including that possible from consecutive sentences;

"(ii) of the mandatory minimum sentence, if any, on the charge;"

[10] "The direct questioning of a defendant by the trial judge on plea of guilty is required by the rule for the purpose of establishing the crime and the participation therein of the person pleading guilty. This is a precaution against involuntary or induced false pleas of

(10) That the defendant's counsel has informed the defendant of his constitutional rights and the elements of the charge against him.[11]

Black, J. (*separate opinion*). With no thought of objection to the recently imparted intentional purpose of the Court that a new guilty plea rule be prepared and adopted for effect prospective beginning April 1, 1972, and solely on account of conviction that Judge Danhof (concurring below, *People v. Rufus Williams* [1970], 23 Mich App 459, 467)

---

guilty, and against subsequent false claims of innocence." *People v. Barrows* (1959), 358 Mich 267, 272.

MCLA § 768.35 (Stat Ann 1954 Rev § 28.1058) states that " * * * whenever said judge shall have reason to doubt the truth of such plea of guilty, it shall be his duty to vacate the same, direct a plea of not guilty to be entered and order a trial of the issue thus formed." We note that in *Barrows* the record gives reason to doubt the truth of the plea, while in the instant case no such doubt is suggested. But see *People v. Stearns* (1968), 380 Mich 704 and discussion in *People v. Rufus Williams* (1971).

See also ABA Standards Relating to Pleas of Guilty, Approved Draft, 1968, p 8:

"1.6 Determining accuracy of plea.

"Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as may satisfy it that there is a factual basis for the plea."

Rule 11 of the Federal Rules of Criminal Procedure, as amended in 1966, provides in part: "The Court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

11 Representation by counsel in all guilty plea cases is absolutely essential and should be insisted on in all but the exceptional case. Representation by counsel is the most important protective device in insuring that pleas of guilty are in fact understandingly and voluntarily made. Counsel is in the best position due to his initial contact with the defendant, his duty to advise the defendant and ideally his relationship of trust with the defendant to weigh the merits of defendant's case and to inform the defendant of his constitutional right to a day in court where his guilt must be proven. It is unrealistic to expect that questions by a judge in open court personally directed to the defendant will alone safeguard the defendant's constitutional right and deter false pleas of guilty. The trial bench needs the cooperation of the Bar if these objectives of the court rule on the taking of guilty pleas are to be obtained. As officers of the court and advocates for their clients, members of the Bar have a vested interest in maintaining the integrity and fairness of the criminal justice system.

has reasoned to the result due here under our decisions as same presently stand, I vote to affirm.

T. E. BRENNAN, J., concurred with BLACK, J.